CATHERINE MYERS, Respondent, *v.* ALBANY SAVINGS BANK, Appellant.

Third Department, March 6, 1946.

*Cooper, Erving & Savage,* attorneys (*Edward S. Rooney* of counsel), for appellant.

*DeWitt & Schneeberg,* attorneys (*Boris Schneeberg* of counsel), for respondent.

FOSTER, J. This is an appeal by the defendant from an order for summary judgment, directed against it in favor of the plaintiff under rule 113 of the Rules of Civil Practice, and from the judgment entered thereon.

Plaintiff is a depositor of the defendant. Prior to May 29, 1937, plaintiff deposited in the defendant bank the sum of $3,260.69. This deposit was given an account number 447583, and a passbook, representing the account, was issued in the name of the plaintiff. The passbook contained certain printed by-laws, rules and regulations adopted by the defendant. Among other matters the by-laws provided: " In case a passbook shall be lost or if the depositor shall be unable to produce the same a new passbook may be issued thirty days or more after notice to the Bank of the loss of the original book, and then pursuant only to written authorization given by the President, Treasurer or an Assistant Treasurer, to be entered in writing in such new book, upon the production of such evidence of its loss or of the inability of the depositor to produce it, and upon the delivery of such bond or security for indemnifying the Bank against all loss or damage as shall be satisfactory to and required by the Bank."

On or about December 14, 1937, the defendant bank was advised by the plaintiff that she had lost the passbook representing her account. Subsequently she visited the bank in person in an effort to make a withdrawal from the account without presentation of the passbook. She was advised that no withdrawal from the account would be permitted unless a new passbook was issued, and a new passbook would not be issued unless she furnished a bond to indemnify the bank against any possible loss. Thereupon and through several sources she

attempted without success to obtain a surety bond, and her efforts in that direction are detailed in her affidavits. It appears to be reasonably clear from the proof she has submitted that she is still unable to procure such a bond, and there appears to be no reasonable likelihood that she will ever be able to do so. In this connection it may be noted that in the briefs submitted by counsel there are references to another lost passbook, but in the record on appeal we find no history of this previous incident. We mention the matter because the inability of the plaintiff to procure a surety bond may be due to a previous loss.

In its answering affidavit the defendant bank has indicated a willingness to accept a bond made by individual sureties if plaintiff is unable to procure a corporate surety bond. Plaintiff says that she has tried to find individuals who would become guarantors on such an obligation but has been unable to find anyone who would assume such a risk.

There appears to be no substantial dispute about any of the facts, unless it be with relation to the loss of the passbook. The proof as to that issue rests upon the statement of the plaintiff who claims that she lost the passbook out of her pocketbook sometime in November, 1937. There seems however to be little reason for doubting her word. A period of over eight years has elapsed since she has been able to withdraw any money from the account and in view of this circumstance it is highly improbable that her claim of loss was a fabricated one.

The question posed is whether a literal enforcement of the bank's by-law for a bond of indemnification is reasonable under the circumstances.

Whether under any and all circumstances such a by-law is to be regarded as a reasonable condition is a question by no means conclusively settled. As late as May, 1913, the Court of Appeals said in *Mierke* v. *Jefferson County Savings Bank* (208 N. Y. 347): " In the case at bar the refusal to pay is based solely on the ground that the bank was entitled to a bond of indemnity. There is nothing in its by-laws entitling it to insist upon such a condition and in the absence of such a provision we do not think it was justified in resisting the plaintiff's claim on that ground. *Whether a by-law requiring a depositor or his legal representatives to give a bond can be regarded as a reasonable condition is a question we are not now called upon to decide.*" (Emphasis supplied.)

The statement italicized was made despite the fact that the Supreme Court at General Term had decided as far back

as 1885 that such a by-law was reasonable and could be strictly enforced. (*Mitchell* v. *Home Savings Bank*, 38 Hun 255.) So far as we can ascertain the question has never been considered by the Court of Appeals since the decision in the *Mierke* case (*supra*). The Appellate Division of the First Department has decided in a fairly recent case that such a by-law is reasonable. (*Krupp* v. *Franklin Savings Bank*, 255 App. Div. 15.) The decision in that case is based somewhat upon the powers conferred upon savings banks by subdivision 3 of section 238 of the Banking Law as it formerly existed, but it should be noted that this statute was amended by chapter 352 of the Laws of 1938, effective after the case was decided, by the addition of this language: " Payments, however, may be made upon the judgment or order of a court." It should also be noted that neither in the *Mitchell* case nor in the *Krupp* case was the issue raised that the depositor was unable to procure an indemnity bond.

In view of the uncertainty these matters may seem to imply as to the facts of this case, we think it well to consider certain fundamental principles that may be applied to the relationship between the parties. Plaintiff became a creditor of the bank and by the same token the bank became her debtor. (*Crosby* v. *Bowery Savings Bank*, 67 How. Pr. 329.) The passbook issued to her was evidence of a debt and of a contract between the parties, but it was not negotiable paper. (*Smith* v. *Brooklyn Savings Bank*, 101 N. Y. 58.) It was strictly speaking a non-negotiable chose in action. (*Lund* v. *Seamen's Bank*, 37 Barb. 129.) As such of course it could be assigned. The primary purpose, and indeed the only reasonable purpose of a bank's by-law requiring a bond or indemnification in the case of a lost passbook is to protect itself against the claim of an assignee in good faith. However, in *Heermans* v. *Ellsworth* (64 N. Y. 159) it was held to be the " duty of an assignee of a non-negotiable chose in action, in order to protect himself against a payment by the debtor to the original creditor, to notify the former of the assignment; and in an action upon the demand where such a payment is established, the burden of proving notice prior to payment is upon the plaintiff." So far as we know this rule has never been repudiated or modified except in the case of instruments subject to the recording acts. We see no reason why it should not be applied to the passbook of a savings bank, which fundamentally is nothing more or less than a non-negotiable chose in action. If this view is correct the bank runs little or no risk in paying a depositor when it is

shown that a passbook has been lost and notice of an assignment has not been given within a reasonable time.

The defendant bank argues that payment of a deposit by a savings bank is an exception to the general rule we have quoted because the provision of the contract with the creditor, who is a depositor, is that no payments will be made without the production of the passbook. Consequently, the bank says, an assignee would have the right to rely upon this promise by the bank not to pay anyone, including the depositor, without the production of the passbook, and might possibly recover against the bank if it paid a depositor in violation of the agreement. This ignores the fact that an assignee is put upon notice by the very terms of the by-laws, printed in the passbook, that a new passbook may be issued under certain circumstances. It also ignores the Banking Law (§ 238) which provides in part that payments may be made upon the judgment or order of the court.

The bank concludes that in any event, whether it runs the risk of double payment or not, the by-law requiring a bond or indemnity, since it forms a part of the contract, may be enforced to the letter. This is a highly legalistic argument and must yield, we think, to the more substantial requirement of justice which the exigencies of the case require. If the principles argued for by the bank are to be accepted as immutable and inflexible, and assuming that plaintiff cannot furnish a bond, she can never recover that which justly belongs to her. From a realistic viewpoint it is useless to say that the bank does not deny the debt and merely stands on its contract for the enforcement thereof. If plaintiff cannot enforce her claim it is small comfort to know that legally the debt still exists. Numerous analogies might be drawn between this case and cases where other instruments for the payment of money have been lost or destroyed. Despite the fact that a note, bond or mortgage is lost or destroyed the means of recovery is never withheld by the imposition of some condition which the creditor finds it impossible to fulfill. Each case of course must stand on its own merits and the relief must be in accord with the situation presented.

In this case we do not intend to hold that the requirement for the indemnification bond in the case of a lost passbook is unreasonable in any and all cases. In fact quite to the contrary we think that the requirement is reasonable and should be enforced where it is within the power of the creditor to comply therewith. But in this case, in view of the long lapse of time, the quite

evident loss of the passbook without assignment and the equally evident inability of the plaintiff to procure an indemnity bond of any character make the enforcement of such a by-law unreasonable and arbitrary. Moreover we think the Banking Law as it now exists permits payment by virtue of the judgment of a court of competent jurisdiction.

The order and judgment should be affirmed, with costs.

HILL, P. J. (concurring). Subdivision 3 of section 238 of the Banking Law inhibits the payment of a deposit by a savings bank " unless the passbook of the depositor be produced and the proper entry be made therein at the time of payment." The board of trustees of a bank is empowered to make payments in cases of the loss of a passbook where the production would seriously inconvenience the depositor. The Superintendent of Banks may overrule the modifying provision if he deems it to be improper. The subdivision then states, " Payments, however, may be made upon the judgment or order of a court." The latter enactment gives jurisdiction to our courts to exercise equitable powers and to modify the terms of the agreement between the savings bank and the depositor in the event the facts justify the giving of such relief. Respondent states in her affidavit that " Early in November, 1937, deponent lost said passbook, together with other personal articles, out of her purse." The lapse of time, with no demand upon the bank, sustains the exercise of the statutory power granted to the court to modify the terms of the contract.

*Krupp* v. *Franklin Savings Bank* (255 App. Div. 15) which granted relief to the depositor only upon condition that the indemnifying bond be furnished, was apparently decided just prior to the statutory amendment which, for the first time, permitted payments to be made upon the judgment or order of a court. (L. 1938, ch. 352.) As the bank, under its by-laws, could make payment only upon the judgment or order of a court, I believe there should be no costs at Special Term or in this court.

All concur in decision except HILL, P. J., who dissents as to the allowance of costs.

All concur in opinion by Foster, J., except HILL, P. J., as to costs, and in a separate memorandum.

Order and judgment affirmed, with costs.