THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
SHELDON JENKINS, Appellant.

Second Department, April 3, 1978

### APPEARANCES OF COUNSEL

*Addesso & Merovitch (Jack A. Addesso* of counsel), for appellant.

*Carl A. Vergari, District Attorney (Gloria M. Dabiri* and *Anthony J. Servino* of counsel), for respondent.

### OPINION OF THE COURT

HOPKINS, J. P.

May a stolen savings account passbook be the subject of a charge of criminal possession of stolen property in the second degree? That is the principal question raised by the defendant on this appeal. Though the defendant challenges his conviction on other grounds, we consider at length only the prime issue. We conclude, on the record presented to us and the applicable statutes, that a stolen savings passbook may properly be the subject of the crime for which the defendant has been convicted.

I

The defendant was indicted for the crimes of grand larceny in the third degree and criminal possession of stolen property in the second degree stemming from the theft of a savings account passbook of a value of over $250 belonging to Diane

MacDonald. At the trial the proof established that Ms. Mac-Donald resided in White Plains, New York, and that on January 6, 1975 she had mailed her savings account passbook with a $40 check, a deposit slip and a return address slip to the Chappaqua branch of the Bankers Trust Company. She did not see the passbook again until January 8, 1975 when a police officer showed it to her; the passbook indicated a balance to her credit of $727.55, including the $40 deposit. She testified that the lock on her mailbox had been broken for some time.

The evidence further demonstrated that on January 8, 1975 Detective De Fazio, in plain clothes, was investigating mail thefts at the site of a four-building apartment complex in White Plains, about three blocks from Ms. MacDonald's residence. When De Fazio entered Building 2, he found the defendant standing near the mailboxes; the defendant thereupon walked out of the building. De Fazio also found several mailboxes pried open and burnt matches on the floor. When he left the building, he saw the defendant going into Building 3. The defendant then came out of that building, greeted De Fazio, and walked toward Building 4. De Fazio, on entering Building 3, discovered that two mailboxes had been pried open and saw burnt matches on the floor. Leaving that building, he went into Building 4 shortly after the defendant. There he saw Benson, a uniformed policeman, at the top of a short flight of stairs in view of the entrance.

The defendant ran down a flight of stairs away from Benson. Although De Fazio identified himself as a police officer and told the defendant to stop, the defendant continued to run away. De Fazio and Benson pursued the defendant through the basement and out of the building. As the defendant entered an automobile, he dropped a gray return envelope marked "Bankers Trust" and De Fazio retrieved it, as well as other papers thrown by the defendant from the car; these papers were found to be envelopes addressed to a person living in the apartment complex.

Soon thereafter, the defendant was arrested as he was alighting from his automobile in a parking lot and was put by the police officers in a patrol car. One of the police officers, alongside the defendant, saw him stuffing objects through a crack in the rear seat. These objects proved to be Ms. Mac-Donald's passbook, an envelope bearing the name of Bankers Trust Company and imprinted with a Chappaqua mail seal, as

well as a return address slip containing Ms. MacDonald's name.

At police headquarters the defendant was given *Miranda* warnings.[1] During a search he attempted to swallow a piece of yellow paper, which had been torn from a telephone directory, containing the addresses of offices of the Bankers Trust Company in the White Plains area.

The jury found the defendant guilty of the charge of criminal possession of stolen property in the second degree.[2]

II

The defendant contends that his conviction cannot stand because the passbook does not constitute property, as that term is statutorily defined, and that, moreover, if the passbook has value, the value is less than $250. He contends, furthermore, that the value of the passbook was an issue to be decided by the jury and that the trial court should have instructed the jury to consider the crimes of petit larceny and criminal possession of stolen property in the third degree, both misdemeanors. Curiously, these contentions do not appear to have been treated by the courts of this State.

■ At common law a bond, bill or note could not be the subjects of larceny *(Payne v People,* 6 Johns 103; 50 Am Jur 2d, Larceny, § 59 *et seq.;* cf. Ann 6 ALR Fed 194). That view has been changed by the statute applicable to the crime of larceny. " 'Property' means any money, personal property, real property, thing in action, evidence of debt or contract, or any article, substance or thing of value" (Penal Law, § 155.00, subd 1). Thus, a draft and a check are now included as objects of larceny *(Phelps v People,* 72 NY 334, 349-355; *People v Lovejoy,* 37 App Div 52).

■ A depositor is a creditor of the bank and the passbook issued to the depositor is evidence of the debt and the contract between them *(Myers v Albany Sav. Bank,* 270 App Div 466, affd 296 NY 562). Nevertheless, as the defendant correctly argues, a passbook is not in itself negotiable (cf. *United States v Bowery Sav. Bank,* 297 F2d 380).

A bank is not required to pay a depositor unless the passbook is produced (Banking Law, § 238, subd 3) and it may

---

1. The defendant had also been given *Miranda* warnings at the time of his arrest.

2. The jury did not return a verdict on the charge of grand larceny in the third degree.

adopt rules and regulations governing the payment (Banking Law, § 238, subd 1). Thus, the passbook is a device intended for the protection of both the bank and the depositor. In the ordinary course of events, Ms. MacDonald could not have obtained her deposit without the passbook; nor could the defendant have withdrawn the deposit even with the passbook, save by committing a forgery of Ms. MacDonald's signature. Hence, the defendant contends that the passbook could not be stolen property and that a withdrawal slip used in an attempt to obtain the deposit would actually constitute the "property" within the statutory definition.

We think that the defendant's argument minces words. The passbook meets the statutory definition in its exact language as an "evidence of debt or contract". That the defendant might not have been able to obtain the funds shown on deposit in the passbook without the commission of a second crime does not transform the meaning of the statute. Indeed, the crime of criminal possession of stolen property in the second degree comprehends not only the knowing possession of stolen property with the intent to benefit the possessor, but also such possession with intent "to impede the recovery by an owner thereof" (Penal Law, § 165.45); and a person who knowingly possesses stolen property is presumed to possess it with the intent "to impede the recovery by an owner thereof" (Penal Law, § 165.55, subd 1). Thus, the lack of negotiability of the passbook, though it affects the element of benefit to the defendant, has no bearing on the element of detriment to the owner by impeding the recovery of the passbook through its possession by the defendant (cf. *People ex rel. St. George v Owen,* 271 App Div 313 [gasoline ration coupons]).

### III

The determination that the passbook is "property" within the ambit of the larceny statutes does not necessarily answer the second aspect of the defendant's argument concerning the measurement of its value. Though the last balance in the stolen passbook indicated a credit of $727.55, he claims that this is merely an unverified statement of the account and cannot be considered as proof of value. As a conviction of criminal possession of stolen property in the second degree requires that the property exceed $250 in value (Penal Law, § 165.45), he urges that the conviction cannot stand and that, at most, he is guilty simply of criminal possession of stolen

property in the third degree, a class A misdemeanor (Penal Law, § 165.40). Alternatively, he argues that the issue of value should have been presented to the jury by an appropriate charge. He notes that this issue had been raised by him during the trial and that his counsel had requested that the court submit a charge of petit larceny to the jury.

The defendant's contentions are correct in part. The distinction between the second and third degree of the crime of criminal possession of stolen property is the value of the property: if it exceeds $250, the higher degree applies. When the value of the property cannot be satisfactorily ascertained, the value is deemed to be less than $250 (Penal Law, § 155.20, subd 3) and, of course, the lesser degree then applies (cf. *People v Napoletano,* 35 AD2d 559; *People v McDonald,* 26 AD2d 822).

We think, however, that the defendant's contentions on the whole cannot be sustained. As we have seen, a passbook is evidence of the debt owed by the bank to the depositor *(Myers v Albany Sav. Bank,* 270 App Div 466, affd 296 NY 562, *supra).* The statute regulating the ascertainment of value in determining the degree of the crime of larceny provides that the "value of an instrument constituting an evidence of debt, such as a check, draft or promissory note, shall be deemed the amount due or collectable thereon or thereby, such figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied" (Penal Law, § 155.20, subd 2, par [a]). We do not consider that the descriptive terms "check, draft or promissory note"—which commonly refer to negotiable instruments—evince an irreversible intent that all instruments must be negotiable before the face amount may be used as the criterion of value; for example, all checks, drafts and promissory notes are not necessarily negotiable. Nor does the statute refer in any explicit sense to negotiability.

We consider, too, that a passbook is an "instrument" within the intent of the statute. It is a writing creating, affecting or embodying a right (Black's Law Dictionary [4th ed], p 941; cf. *People v Seymour,* 55 AD2d 737; *People v Rouss,* 63 Misc 135, 142-143). A passbook may be assigned by the depositor (see, e.g., Banking Law, § 238, subd 3) and the statute describes it, in its legal relation to the issuing bank, as interchangeable with "such other evidences of its [the bank's] obligation to repay such deposits" (Banking Law, § 238, subd 6).

Hence, we hold that the trial court was justified in charging the higher degree of the crime and refusing to submit petit larceny to the jury. The passbook indicated on its face evidence of a debt greater than $250 and was an instrument within the fair import of the governing statute (see Penal Law, § 5.00). We assign no weight to the defendant's contention that the balance shown was not verified by any evidence. The passbook was one in form issued by a recognized bank, the depositor testified to the amount owed to her by the bank and nothing appeared on the face of the passbook to demonstrate that the amount was erroneous or irregular (cf. CPLR 4518).

## IV

■ The other contentions of the defendant have been considered by us and found unavailing. We see nothing in his claim that he was deprived of a fair trial because of the testimony received that he attempted to swallow the piece of yellow paper. The testimony was not objected to and we think that it was relevant as conduct evincing guilt (see Richardson, Evidence [Prince, 10th ed], § 167, pp 134-136). The fact that the piece of paper was not produced at the trial did not prejudice the defendant or establish an unfair trial.

Nor is there any merit to the defendant's challenge to the sufficiency of the evidence to prove guilt beyond a reasonable doubt. The evidence was more than sufficient to support the verdict.

Accordingly, the judgment should be affirmed.

TITONE, SUOZZI and MARGETT, JJ., concur.

Judgment of the County Court, Westchester County, rendered August 5, 1976, affirmed.