■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL W. LANAHAN, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered February 18, 1981, upon a verdict convicting defendant of the crime of criminal possession of stolen property in the second degree. At 4:30 A.M. on June 1, 1980, the Town of Colonie Police responded to a radio message to go to the area of 20 Hunting Road following a call by the resident who reported activities of a suspicious nature by the occupants of a parked car. The police followed the car to 47 Red Fox Drive, at which address neither defendant nor the passenger in the car resided. After parking in the driveway, defendant and the passenger approached the police car which was stopped in front of the house but was not blocking the driveway. While the officer was examining defendant's license and identification, a second police car arrived and that officer looked into defendant's vehicle and observed a lady's pocketbook. Upon attempting to verify defendant's explanation that the handbag belonged to a girlfriend whom he had previously dropped off at her home the police discovered that the bag together with other items of personalty had been stolen from a vehicle parked in front of 35 Hunting Road. Thereupon, defendant and the passenger, his codefendant, were arrested and the car was towed to the police station where it was searched. In denying suppression of both the property seized and the statements made, the trial court held that until the time of defendant's arrest, the questioning was noncustodial; that the pocketbook was taken from defendant's auto with consent; and that the suspicious circumstances together with the responses of defendant to the officer's inquiries, all combined to provide probable cause for the arrests, negating any claims of deprivation of constitutional rights. On this appeal, defendant argues that the police lacked probable cause to stop his vehicle, question him and seize the property, and that the trial court incorrectly charged the jury concerning the value of the stolen items. Our analysis begins with the observation that Officer Zostant acted properly and did not infringe upon any of defendant's constitutional rights, to be remembered is the fact that the officer responded to a police radio call concerning suspicious conduct by the occupants of a vehicle on Hunting Road. He never put the flashing lights, siren or horn on his police car into operation and followed the only car he found on Hunting Road until it was parked by the driver's own volition in a driveway on Red Fox Drive. The officer did not block the driveway nor did he even get out of the police car; rather, defendant and his companion voluntarily walked to the police car where the officer asked the driver for his license and vehicle registration. Up to this point, there was no detention, no interrogation and no interference with defendant's freedom of movement (see *Terry v Ohio,* 392 US 1; *People v Cantor,* 36 NY2d 106). Because defendant was not prevented from doing anything he wanted to do, nor directed to do anything, nor was his car stopped or blocked by the police, there was no stop within the meaning of CPL 140.50 (see *People v Miller,* 52 AD2d 425, 428, affd 43 NY2d 789; cf. *People v Allende,* 39 NY2d 474). The analysis under the Fourth Amendment to the United States Constitution is "the reasonableness in all the circumstances of the particular invasion of a citizen's personal security" (*Terry v Ohio,* 392 US 1, 19, *supra*). To be considered are "(1) the nature and scope of severity of the interference with individual liberty, (2) the public interest served, and (3) the objective facts upon which the [law] enforcement officer relied, in light of his knowledge and experience" (*People v Howard,* 50 NY2d 583, 589). Even if this were deemed a stop, which it was not, we would uphold Officer Zostant's conduct. To be lawful, the stop of a vehicle must not be the "product of mere whim, caprice, or idle curiosity" and " 'specific and articulable facts' " must formulate the predicate for the intrusion (*People v Ingle,* 36 NY2d 413, 420; see *Delaware v Prouse,* 440 US 648,

661). We find that the conduct of the officer was wholly reasonable under the circumstances. We have been instructed that "[c]ourts simply must not * * * attempt to dissect each individual act by the policemen; rather, the events must be viewed and considered as a whole, remembering that reasonableness is the key principle" (*People ·v Chestnut,* 51 NY2d 14, 23). Turning to the succeeding events in which the lady's pocketbook was observed on the front seat of defendant's car and picked up by Officer Palladino, we similarly find no infirmities which would produce an unlawful seizure (see *United States v Ross,* 456 US 798). It should be noted that defendant and the other occupant of the car came up to Officer Palladino outside Officer Zostant's car at which time he inquired as to who owned the handbag. The officer's physical act of picking up the handbag out of defendant's car occurred only after both occupants were unable to give him either the last name or the address of the owner whom they allegedly had just dropped off at her home on Hunting Road a few minutes earlier. Defendant did not object to Officer Palladino's suggestion that he look inside the bag to ascertain the owner's name and address. We do not find these actions to have been an unlawful search and seizure proscribed by the Fourth Amendment. "Whether or not a particular search or seizure is to be considered reasonable requires weighing the government's interest in the detection and apprehension of criminals against the encroachment involved with respect to an individual's right to privacy and personal security" (*People v Cantor,* 36 NY2d 106, 111, *supra*). The reasonableness standard contemplates and permits a flexible set of escalating police responses, provided only that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds (*People v Finlayson,* 76 AD2d 670, 675). In the totality of the circumstances, given an alarm call to investigate suspicious activities, and the events that followed, including the manner and substance of defendant's responses to the appropriate inquiries made by the police officers, we cannot say that either the conduct of the police or the court's refusal to suppress was improper or erroneous. Defendant's final challenge to the trial court's charge to the jury concerning the value of stolen goods must similarly be rejected. Defendant argues that the lack of evidence of the value of $1,050 worth of traveler's checks or of the value of the other stolen items found in the pocketbook, failed to comply with the requirements of subdivision 1 of section 165.45 of the Penal Law. We disagree. The statute requires the commission of either of two wrongful acts arising out of the possession of stolen property. The first is when the defendant intends to benefit himself or a person other than the owner with the property, or, second, when he intends to impede the recovery of the property by the owner. Both require that the value of the stolen property must exceed $250. A draft and a check are included in the definition of objects of larceny (*Phelps v People,* 72 NY 334, 349-355; *People v Lovejoy,* 37 App Div 52), as is a savings bank passbook (*People v Jenkins,* 61 AD2d 705; *Myers v Albany Sav. Bank,* 270 App Div 466, affd 296 NY 562). Section 155.20 (subd 2, par [a]) of the Penal Law provides that the value of a stolen instrument, such as a draft, check or note, shall be deemed the amount due or collectible thereon, such figure ordinarily being the face amount, in this case $1,050. Accordingly, the trial court's charge to the jury as to the value of the stolen checks was correct. Judgment affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.