People v Sanon (2020 NY Slip Op 00003)





People v Sanon


2020 NY Slip Op 00003


Decided on January 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 2, 2020

109983

[*1]The People of the State of New York, Respondent,
v
Dawedo Sanon, Appellant.

Calendar Date: November 13, 2019

Before: Mulvey, J.P., Devine, Aarons and Pritzker, JJ.


Carolyn B. George, Albany, for appellant.
P. David Soares, District Attorney, Albany (Jonathan P. Catania of counsel), for respondent.



Mulvey, J.P.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered September 13, 2017 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of stolen property in the third degree, grand larceny in the third degree and criminal possession of stolen property in the fifth degree.
On August 30, 2016, defendant deposited four United States Postal Service (hereinafter USPS) money orders, each valued at $998, into her account at the State Street branch of the State Employees Federal Credit Union (hereinafter SEFCU) in the City of Albany. Two days later, defendant withdrew $3,992 from her account at SEFCU's Clinton Avenue branch, also in the City of Albany. Approximately 15 minutes later, defendant attempted to deposit another $998 USPS money order at the State Street branch. Defendant was charged by indictment with criminal possession of stolen property in the third degree, grand larceny in the third degree and criminal possession of stolen property in the fifth degree for knowingly possessing stolen USPS money orders and stealing United States currency. After a jury convicted her of all charges, Supreme Court sentenced defendant to concurrent terms of six months in jail, followed by five years of probation, on her convictions of criminal possession of stolen property in the third degree and grand larceny in the third degree, and to six months in jail on her conviction of criminal possession of stolen property in the fifth degree. Defendant appeals.
Defendant argues that Supreme Court erred in denying her motions for a trial order of dismissal both at the close of the People's case-in-chief and at the close of the defense case. However, "a defendant who presents evidence after a court has declined to grant a trial motion to dismiss made at the close of the People's case waives subsequent review of that [initial] determination" (People v Hines, 97 NY2d 56, 61 [2001]). In such a situation, a court reviewing the legal sufficiency of the evidence must "tak[e] into account all of the evidence the jury considered in reaching th[e] verdict, including proof adduced by the defense" (id.). "When addressing a challenge to the legal sufficiency of the evidence, this Court evaluates whether the evidence, viewed in the light most favorable to the People, provides any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged" (People v Watson, 174 AD3d 1138, 1139 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 955 [2019]). Defendant challenges the sufficiency of the evidence as to each element of each count.
As relevant here, "[a] person is guilty of criminal possession of stolen property in the fifth degree when he [or she] knowingly possesses stolen property, with intent to benefit himself [or herself] or a person other than an owner thereof" (Penal Law § 165.40). To establish criminal possession of stolen property in the third degree, the People must prove, in addition to all those elements, that "the value of the property exceeds [$3,000]" (Penal Law § 165.50). "Knowledge that property is stolen may be shown circumstantially, such as by evidence of . . . [the] defendant's conduct or contradictory statements from which guilt may be inferred" (People v Zorcik, 67 NY2d 670, 671 [1986]; see People v Cintron, 95 NY2d 329, 332 [2000]; People v Hahn, 159 AD3d 1062, 1063 [2018], lv denied 31 NY3d 1117 [2018]). Regarding the remaining count, "[a] person is guilty of grand larceny in the third degree when he or she steals property and . . . the value of the property exceeds [$3,000]" (Penal Law § 155.35 [1]). "Larcenous intent is rarely susceptible of proof by direct evidence, and must usually be inferred from the circumstances surrounding the defendant's actions" (People v Shortell, 173 AD3d 1364, 1365 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 937 [2019]; see People v Rogers, 157 AD3d 1001, 1008 [2018], lv denied 30 NY3d 1119 [2018]).
As to the value of stolen items, "[t]he value of an instrument constituting an evidence of debt, such as a check," whether or not the instrument has been issued or delivered, is "the amount due or collectible thereon or thereby, such figure ordinarily being the face amount of the indebtedness" (Penal Law § 155.20 [2] [a]; see People v Lanahan, 89 AD2d 629, 630 [1982]; cf. People v Whittemore, 65 AD2d 631, 631 [1978]). On the other hand, where the stolen property is cash from an account, rather than an instrument constituting an evidence of debt, the value of the amount stolen is "the amount of [the] defendant's withdrawals, offset by legitimate starting balances" (People v Esquilin, 37 AD3d 197, 198 [2007], lv denied 8 NY3d 880 [2007]).
A USPS inspector testified that the money orders were real, and serial numbers on them traced back to post offices in Petersburg, Virginia and Holyoke, Massachusetts. The inspector had seen photos and video from an instance in which money orders were stolen from Holyoke. He had been informed that other money orders were missing from Petersburg. The zip code on the first four money orders indicates that they were purchased in Brooklyn, which was inconsistent with the locations where the money orders had been assigned by the USPS. Moreover, when the inspector checked the serial numbers, the USPS computer system indicated that the five money orders at issue had never been purchased by a customer or issued by the USPS. Additionally, the inspector testified that he unsuccessfully attempted to find the individuals named as payors, who allegedly purchased the money orders. His research in public records databases available to law enforcement officers, as well as USPS records and change of address files, revealed that no individuals with those names resided at the out-of-state addresses included on the money orders. This evidence was legally sufficient to establish that the money orders constituted stolen property.
Defendant's conduct and contradictory statements support an inference as to her knowledge that the property was stolen. She deposited the four money orders at the end of the day at one branch and was told that the money would be available in two or three days. She then withdrew the full amount of those money orders in cash from another branch two days later, as soon as the branch opened. Fifteen minutes later, she arrived at the first branch again — which was located approximately fifteen minutes away — to deposit another money order for the same amount. All the money orders contained notations that they were for hair supplies. Defendant first told a SEFCU employee that she received the money orders for doing hair. Defendant then told a SEFCU employee that she received the money orders from her mother to help pay for school. At trial, defendant testified that she received the money orders in exchange for the sale of her jewelry. Defendant testified that she met a stranger on the street who agreed to pay almost $5,000 for her jewelry but, after being informed that the money orders were invalid, defendant could not locate this person. Defendant testified that she sold the jewelry to one woman, who wrote out the information on the money orders, which was inconsistent with proof that the money orders were purportedly from two different payors and appeared to be handwritten by two different people. Additionally, a SEFCU fraud investigator testified that SEFCU runs a verification on all checks and money orders of $1,000 or more, and a typical scheme involves writing fraudulent instruments for just under that threshold, like the $998 money orders here. Viewed in a light most favorable to the People, this evidence established that defendant knew that the money orders were stolen property when she possessed them (see People v Sapinski, 235 AD2d 880, 882 [1997], lv denied 89 NY2d 1041 [1997]; see also People v Archer, 160 AD3d 553, 553 [2018], lv denied 31 NY3d 1144 [2018]; People v Miller, 114 AD2d 863, 864 [1985], lv denied 67 NY2d 763 [1986]).
Defendant testified that she brought the first four money orders — for $998 each, or a total of $3,992 — to the State Street branch on August 30, 2016 and deposited them into her account, withdrew $3,992 from her account two days later at the Clinton Avenue branch, then brought another $998 money order to the State Street branch to deposit it. Although the money orders were blank when they were stolen or went missing, the face value of the first four money orders — which was credited to defendant's account after she deposited them — was over $3,000 (see Penal Law § 155.20 [2] [a]; People v Jenkins, 61 AD2d 705, 710-711 [1978]), as was the amount of cash that defendant received when she made the withdrawal on September 1, 2016. Her testimony established that she possessed the money orders, which were stolen property, as well as the cash that she withdrew.
Defendant's intent to benefit herself can be inferred from her actions of depositing the money orders into her own account and withdrawing the same amount in cash two days later, as well as testimony demonstrating that she paid off many outstanding bills within a few days of this withdrawal. Based on evidence that defendant knew the money orders were stolen and they were made out to her, an inference can be drawn that she knew she was not entitled to them or any value from them. Thus, when defendant withdrew cash in the same amount as the deposited money orders, she had larcenous intent (see People v Brown, 107 AD3d 1145, 1146-1147 [2013], lv denied 22 NY3d 1039 [2013]) and was stealing that cash (see People v Esquilin, 37 AD3d at 198). Considering all the trial evidence in a light most favorable to the People and giving them the benefit of every favorable inference, the evidence was legally sufficient to establish every element of each count.
Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.