STATE of Indiana, Appellant–Plaintiff,

v.

Larry W. ASHLEY, Appellee–Defendant.

No. 02A05–9501–CR–9.

Court of Appeals of Indiana.

Dec. 28, 1995.

---

2. Now Admis.Disc.R. 23(11.1)(b)(2).

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for Appellant.

Lewis H. Griffin, Deputy Public Defender, Fort Wayne, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

The State of Indiana appeals the trial court's granting of a motion to suppress in favor of the defendant-appellee, Larry W. Ashley, based upon alleged fifth and sixth amendment violations. The motion to suppress concerned statements Ashley made to a paid confidential informant about stolen property. The sole issue for our review is whether the trial court erred in granting the motion to suppress. We reverse.

The facts most favorable to the judgment follow. From approximately November 1993, to March 1994, the Allen County Sheriff's Department employed Scott Bell as a confidential informant. Bell was employed to report the criminal activities of any persons with whom he resided. At this time, Bell lived in a house owned by David Purcell where Ashley also resided.

In his capacity as a confidential informant, Bell visited Ashley in jail. During the visit, Bell wore a concealed recording device. Ashley told Bell that there was a safe in the basement of the house where they resided and that Ashley wanted Bell to remove the safe. The safe had recently been stolen. After the visit, Bell contacted Detective Tom Gratz of the Sheriff's Department and turned over the recording of the visit. Bell later inspected the house to confirm the presence of the safe and so informed Detective Gratz.

A few days later, Bell again visited Ashley in jail. This time, Ashley told Bell that there was a white bucket near a freezer in the basement with old rugs on it which needed to "disappear." Record, p. 58. Bell returned to the house and found the bucket in the basement. He contacted Gratz and turned over the bucket. The bucket contained pay envelopes, money drops, and plastic coin tubes. After Bell reported what he had found, Gratz and other detectives went to the house to investigate. Purcell consented to a search of the basement where the detectives found the safe that Ashley had asked Bell to remove. On June 6, 1994, the State charged Ashley with receipt of the stolen safe, a class D felony.

On September 24, 1994, Ashley filed a motion to suppress his statements made to Bell. Ashley argued that the statements were obtained in violation of his fifth and sixth amendment rights. On September 29, 1994, the trial court conducted a hearing on the motion which was granted. The trial court then addressed the issue of whether the physical evidence seized as a result of the statements also needed to be suppressed as the "fruit" of the improper statements. The trial court requested the State to provide any evidence that the safe and bucket would have been discovered without the statements. The State presented evidence of other statements made by Ashley to serve as an independent basis from which to admit the physical evidence. However, the trial court ruled that it would exclude any statements made by Ashley following his first tape recorded statement as a "fruit of the initial violation." Record, p. 74.

Shortly thereafter, the trial court granted the State's motion to dismiss the charges without prejudice. The State now appeals the trial court's granting of the motion to suppress the statements made to Bell and the physical evidence gathered as a result of those statements.

*Discussion*

■ Initially, we note our standard of review with respect to an appeal of the granting of a motion to suppress. The State has the burden of demonstrating the constitutionality of the measures it uses in securing information. Therefore, the State is appealing from a negative judgment. *State v. Smith* (1994), Ind.App., 638 N.E.2d 1353, 1355. We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We will consider only the evidence most favorable to the judgment and will not reweigh the evidence or judge the credibility of the witnesses. *Id.* In its order granting Ashley's motion to suppress, the trial court did not state which grounds supported its decision. Since the trial court did not indicate the grounds on which it granted the motion, we will examine the three possibilities raised in Ashley's memorandum in support of the motion and in his appellate brief.

■ First, we address whether the conversations between Ashley and Bell violated Ashley's fifth amendment privilege against self-incrimination and, therefore, whether the motion to suppress was properly granted. The United States Supreme Court has analyzed when *Miranda* warnings are required by an undercover agent prior to questioning a suspect. In *Illinois v. Perkins* (1990), 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243, an undercover agent was placed in a cell with Perkins, who was being held on charges unrelated to a murder that the agent was investigating. Perkins made statements to the agent implicating himself in the murder. Perkins subsequently filed a motion to suppress and argued that the statements were inadmissible because the agent had failed to give *Miranda* warnings prior to questioning. Upon reversing the motion to suppress, the Supreme Court thoroughly analyzed the purposes underlying the *Miranda* warnings but found that those concerns were not implicated in this situation. Specifically, the *Miranda* doctrine serves to protect a suspect from admitting statements during a "custodial interrogation" without a prior warning. *Id.* at 296, 110 S.Ct. at 2397. A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody...." *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. The *Miranda* warning is meant to protect a suspect during an interrogation "in a police dominated atmosphere." *Id.* at 445, 86 S.Ct. at 1612. However, the Supreme Court has determined that the *Miranda* doctrine is not implicated when the suspect is questioned by an undercover agent while in jail:

> "The essential ingredients of a 'police-dominated atmosphere' are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking.... There is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess.

> \* \* \* \* \* \*

> We reject the argument that *Miranda* warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent.

> \* \* \* \* \* \*

> *Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust is one he supposes to be a fellow prisoner. As we recognized in *Miranda:* '[C]onfessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.' Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."

*Perkins,* 496 U.S. at 296–297, 110 S.Ct. at 2397 (citations omitted).

■ While our case is not factually identical to *Perkins,* we find the two cases to be

analogous and, therefore, find the holding in *Perkins* to be applicable. Like *Perkins,* Bell visited Ashley in jail while Ashley was held on unrelated charges.[1] In addition, Ashley asked for Bell's assistance in removing the incriminating evidence in the house. It is clear that "placing an undercover agent near a suspect in order to gather incriminating information" does not violate the fifth amendment protection against self-incrimination. *Perkins,* 496 U.S. at 298, 110 S.Ct. at 2398 (citing *Hoffa v. U.S.* (1966), 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374). We find neither that this situation was a "police-dominated atmosphere" nor that Ashley was coerced into giving the statements. Ashley voluntarily appealed to Bell to help remove the incriminating evidence. We find that Bell's visit to the jail was a "mere strategic deception" in which Ashley put his misplaced trust into one he believed to be a friend. *Id.* at 297, 110 S.Ct. at 2397. Moreover, while Ashley contends that *Perkins* is distinguishable, he failed to provide a cogent distinction, and upon our reading of the case, we are unable to discern his argument. Accordingly, in light of *Perkins,* we hold that there was no violation of Ashley's fifth amendment privilege against self-incrimination.

■ Next, we address the argument that Ashley's fifth amendment right to counsel was violated when he was interrogated after he had invoked his sixth amendment right to counsel on the unrelated charges. Ashley relies upon the holding in *United States ex. rel. Espinoza v. Fairman* (7th Cir.1987), 813 F.2d 117, *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745, for the proposition that a criminal defendant who has asserted sixth amendment protection in one proceeding and remained in police custody had also invoked the fifth amendment right to counsel in an unrelated criminal investigation. However, the holding in *Espinoza,* if not explicitly overruled, has been severely limited by the seventh circuit:

"In *United States ex. rel. Espinoza v. Fairman,* we held that, by invoking his Sixth Amendment right to counsel at a preliminary hearing, a defendant had invoked his *Miranda* right to counsel for future interrogations concerning other crimes. The Supreme Court's decision in *McNeil* directly overruled that holding and undercut the rationale the decision relied upon. To the extent *Fairman* could have been read to allow a defendant to invoke his *Miranda* rights outside the context of custodial interrogation, the decision is no longer of precedential value."

*United States v. LaGrone* (7th Cir.1994), 43 F.3d 332, 337–338, n. 6. Thus, we find Ashley's position to be without merit. We also note there is no evidence that Ashley was asked questions by Bell. All the record reflects is that Ashley told Bell about the safe and bucket. For all the record shows, the statements could have been completely spontaneous.

Moreover, in *McNeil v. Wisconsin* (1991), 501 U.S 171, 111 S.Ct. 2204, 115 L.Ed.2d 158, the Supreme Court held that the assertion of the *Miranda* right to counsel cannot be inferred from the invocation of the sixth amendment right to counsel on different charges. "[T]o find that [the defendant] invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request." *Id.* at 178–179, 111 S.Ct. at 2209.

■ Finally, we address the argument that the statements made to Bell are inadmissible because Ashley's sixth amendment right to counsel was violated. In his memorandum in support of the motion to suppress, Ashley merely asserted that his right was violated and cited two supreme court cases without further elaboration. Upon review, we find no sixth amendment violation.

■ The sixth amendment guarantees an accused the right to have assistance of counsel during a criminal prosecution. U.S. CONST. amend. VI. This right to counsel does not attach until judicial proceedings have been initiated against the criminal de-

---

1. The parties both address the unrelated charges in the hearing for the motion to suppress but those charges are not part of the record before us and, therefore, we are unable to identify them. However, the specific nature of the unrelated charges is irrelevant since we only need to know that the charges were unrelated.

fendant. *Brewer v. Williams* (1977), 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, *reh'g denied.* Once the proceedings have begun, the government has committed itself to prosecution and the right to counsel has attached. *United States v. Gouveia* (1984), 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146. However, the sixth amendment right is offense specific. *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207. As such, the right cannot be invoked once for all future prosecutions. *Id.* Thus, when judicial proceedings have been initiated against a defendant on one criminal charge, but the government is continuing to investigate additional charges, the invocation of the sixth amendment right in the initial proceeding does not attach to the subsequent investigation:

> "The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.] ... [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities."

*Id.* at 175–176, 111 S.Ct. at 2207 (quoting *Maine v. Moulton* (1985), 474 U.S. 159, 179–180, 106 S.Ct. 477, 488–489, 88 L.Ed.2d 481); *see also Moulton,* 474 U.S. at 180, 106 S.Ct. at 489, n. 16. We find that the State did not violate Ashley's sixth amendment right to counsel because he had not been charged with the crime of receiving stolen property at the time the statements were made to Bell.

We hold that the trial court erred in granting Ashley's motion to suppress because neither his fifth nor his sixth amendment rights were violated. Therefore, we reverse the judgment of the trial court and remand this cause for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

BARTEAU and STATON, JJ., concur.