**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**Troy D. HARRIS, Appellee–Defendant.**

**No. 33A05–9712–CR–508.**

Court of Appeals of Indiana.

Nov. 4, 1998.

Jeffrey A. Modisett, Attorney General, Kimberly MacDonald, Deputy Attorney General, Indianapolis, for appellant-plaintiff.

## OPINION

FRIEDLANDER, Judge.

After his arrest on February 17, 1997, Troy D. Harris was charged with Operating a Motor Vehicle After Forfeiture of License for Life,[1] a class C felony, and Operating Without Proof of Financial Responsibility,[2] a class C misdemeanor. The jury trial on these charges commenced on August 25, 1997. During the State's presentation of its evidence-in-chief, defense counsel made an oral motion to suppress. The trial was recessed, and the court held a hearing on the motion to suppress. The trial court sustained the motion to suppress, and the State then moved to dismiss both counts against Harris. The State now brings this appeal, raising the following issue:

> After stopping Defendant for a traffic violation, Officer [Brad] Flynn discovered that Defendant's license had previously been forfeited for life. The trial court suppressed any evidence the State received at the moment Officer Flynn asked Defendant for his driver's license. Did the trial court err when it suppressed this evidence?

Appellant's Brief at 1. Harris did not file an appellate brief.

■ We reverse and remand for further proceedings consistent with this opinion.[3]

---

1. Ind.Code Ann. § 9–30–10–17 (West Supp. 1998).

2. Ind.Code Ann. § 9–25–8–2 (West Supp.1998).

3. Because Harris did not object when the State moved to dismiss the charges against him, the State may retry Harris without violating double jeopardy principles. See Ind.Code Ann. § 35–34–1–13(b) (West 1998); *Ried v. State*, 610

The facts most favorable to the judgment are as follows. Brian Hess, who was riding with Officer Flynn in a patrol car on February 17, 1997, testified at Harris's trial that he saw a truck pulling a trailer which contained another vehicle. As the truck drove through an intersection in front of Flynn's vehicle, Hess saw a rear ramp of the trailer fall. The ramp was dragging on the ground while the truck continued onward.

At the hearing on the motion to suppress, Flynn testified that he was on patrol and traveling on Broad Street in a westbound direction when he saw the truck Harris was driving going southbound on 18th. Flynn observed the truck, which was pulling a trailer, enter the intersection of Broad and 18th and hit a dip in the road. A chain on the right ramp of the trailer came undone and caused the ramp to hit the road, and the ramp began to spark while it was being dragged along.

Officer Flynn then pulled over Harris's truck and asked Harris for his driver's license and vehicle registration.[4] When Harris told Flynn that he did not have either item with him, Flynn asked Harris for his name, date of birth, and social security number and explained that he had stopped him because the ramp on the trailer had fallen. Harris eventually gave Flynn his correct name and social security number after having repeatedly given Flynn false information. Flynn then discovered that Harris's driver's license had been suspended for life.

At the conclusion of the hearing on the motion to suppress, the court excluded all evidence received after Flynn asked Harris for his driver's license. In ruling on Harris's motion to suppress, the trial court case relied upon *United States v. McSwain,* 29 F.3d 558 (10th Cir.1994), and *State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237, *cert. denied,* 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). In *McSwain,* a police officer in Utah stopped McSwain because the vehicle he was driving had neither a front nor a rear license plate, and it appeared that the expiration date on the temporary registration sticker posted on the rear window of the vehicle was covered by reflective tape. However, when walking up to McSwain's vehicle, the officer noticed that the temporary registration sticker was from Colorado and the reflective tape was a new device used by the State of Colorado to prevent alteration of the sticker's expiration date. The officer also noticed that the sticker was valid and not expired. The officer nonetheless approached McSwain, made a comment about the sticker, and then asked McSwain questions about the vehicle and to produce his driver's license and vehicle registration. When McSwain informed the officer that he did not have a driver's license, the officer began to ask McSwain and the passenger in his vehicle where they had been, and McSwain told the officer that they had been gambling in Las Vegas. The officer noticed a receipt dated the previous day from an oil change establishment in Pasadena, California. The officer then returned to his patrol car to request a computer check. As a result of the computer check, the officer learned that McSwain had a suspended driver's license and a prior record for drug and gun violations and assaults. The officer returned to McSwain's vehicle and inquired what McSwain had been doing in Denver and whether he lived there. The officer also asked McSwain whether he had any alcohol, firearms, or drugs in the vehicle. After McSwain answered in the negative, the officer asked for permission to search the vehicle. During the search, the officer found a set of scales, a gun, and a plastic bag containing a substance that appeared to be cocaine in a duffel bag in the trunk of the vehicle. When the officer asked McSwain whether the substance was cocaine and McSwain indicated that it was, the officer arrested both McSwain and his passenger. After entering a conditional guilty plea to drug and firearms offenses, McSwain appealed, challenging the trial court's denial of his motion to suppress

N.E.2d 275 (Ind.Ct.App.1993), *aff'd,* 615 N.E.2d 893 (Ind.1993).

**4.** Flynn testified that he stopped Harris's truck because the trailer was in an unsafe condition,

and his intention was to warn the driver about the condition of the trailer and tell him to have it fixed.

evidence obtained during the warrantless search of his vehicle.

The Tenth Circuit Court of Appeals in *McSwain* determined that, once the police officer observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied and the officer's further detention of the vehicle to question McSwain about his vehicle and his travel itinerary and to request his driver's license and registration "exceed the scope of the stop's underlying justification." *McSwain,* 29 F.3d at 561. The court concluded that the officer had unlawfully detained McSwain and reversed the district court's denial of McSwain's motion to suppress the evidence found in his vehicle.

*Chatton* involved facts similar to those in *McSwain.* The defendant in *Chatton* was pulled over by a police officer after the officer noticed that Chatton's vehicle had neither a front nor a rear license plate. When the officer approached the vehicle, he noticed a temporary license placard in the rear window of the vehicle. Nonetheless, the officer requested that Chatton, who was driving the vehicle, produce his driver's license. After Chatton produced the license, the officer learned that Chatton's license was suspended. Chatton was arrested for driving with a suspended license. After arresting Chatton, the officer discovered a revolver underneath the driver's seat. Chatton was thereafter indicted for carrying a concealed weapon. After he pleaded no contest to the carrying a concealed weapon charge, Chatton appealed the trial court's denial of his motion to suppress. The Ohio Supreme Court determined that the police officer did not have justification to detain Chatton after the officer viewed the temporary license tag which was visible through the rear window of the vehicle. The court concluded that any evidence seized as a result of the search of Chatton's vehicle was inadmissible under the Fourth Amendment.

At the hearing on Harris's motion to suppress, the trial court commented on *McSwain* and *Chatton* and their application to this case, stating in pertinent part:

The stopping of a vehicle and the detention of its occupants constitutes a seizure within the meaning of the Fourth Amendment. To determine the reasonableness of such a seizure, we employ a dual inquiry: 1) whether the officer's action was justified at its inception; and, 2) whether the action was reasonably related in scope to the circumstances which justified the interference in the first place. The Court in *McSwain* found that the duration of the detention involved in that case violated the Fourth Amendment. Applying that two part test to this case: No. 1) whether the officer's action was justified at its inception? I'd say yes. In other words, if nothing other than for public safety. To stop a vehicle that has a loading ramp dragging on the road is justified. Then the next question, whether the action was reasonably related in scope to the circumstances which justified the interference in the first place? I think the answer there in this case is no, and the officer has indicated that his purpose was to rectify that situation, stop the Defendant, notify him of it, get it fixed and let him be on his way. To ask him then for his license and identification at that point, has no particular relationship to that, that first purpose. He's also indicated that he didn't really have an intent to write a ticket for any violation. The case of Chatton, *Chatton,* likewise, is somewhat similar. It too, was a temporary license placard case. It almost reads identical to the facts in the preceding case where a police officer stops a motor vehicle which displays neither a front or rear license plate, but upon approaching the stopped vehicle observes the temporary tag which is visible through a rear windshield. The driver may not be detained further to determine the validity of his driver's license absent some specific and articulable facts indicating that detention was reasonable and any evidence seized upon subsequent search of the passenger compartment was then inadmissible under the Fourth Amendment. I would have to, therefore, find that the Fourth Amendment, under the circumstances of this case, has been violated, which invokes the exclusionary rule.

* * * * *

[A]ll the evidence ... revealed by the Defendant at an Initial Hearing upon the Court's questioning, the BMV records that were acquired as a result of information finally gleaned from the Defendant, are excluded in this proceeding.

*Record* at 123–24, 128.

After the court granted Harris's motion to suppress, the State dismissed its case against Harris. The State argues on appeal that the trial court erred in excluding the evidence because it was discovered as a result of a valid traffic stop.

■ When appealing from a trial court's order granting a motion to suppress, the State has the burden to demonstrate the constitutionality of the measures it used to secure information. *State v. Ashley*, 661 N.E.2d 1208 (Ind.Ct.App.1995). It is therefore appealing from a negative judgment. *Id.* This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id.* "We will consider only the evidence most favorable to the judgment and will not reweigh the evidence or judge the credibility of the witnesses." *Id.* at 1211.

■ It is well settled that a police officer may briefly detain someone whom the officer believes has committed an infraction or ordinance violation. *Peete v. State*, 678 N.E.2d 415 (Ind.Ct.App.1997), *trans. denied.* Ind. Code Ann § 9–21–7–1 (West 1992) provides:

A person may not drive or move on a highway a:

(1) motor vehicle;

(2) trailer;

* * * * *

(4) ...; or

(5) combination of a motor vehicle, trailer, semitrailer, or pole trailer;

unless the equipment upon the vehicle is in good working order and adjustment, as required in this article, and the vehicle is in safe mechanical condition that does not endanger the person who drives the vehicle, another occupant of the vehicle, or a person upon the highway.

A person who violates the above statute commits a class C infraction. IC § 9–21–7–13.

■ At the time of the alleged offense, Ind.Code Ann. § 34–4–32–2 (West 1983), now Ind.Code Ann. § 34–28–5–3 (West Supp. 1998), provided:

Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, he may detain that person for a time sufficient to:

(1) inform the person of the allegation;

(2) obtain the person's:

(A) name, address, and date of birth; or

(B) driver's license, if in his possession; and

(3) allow the person to execute a notice to appear.

A person who knowingly or intentionally refuses to provide either his name, address, and date of birth or his driver's license, if in his possession, to a law enforcement officer who has stopped him for an infraction or ordinance violation commits a class C misdemeanor. *See* IC § 34–4–32–3 (West 1983), now IC § 34–28–5–3.5 (West Supp.1998). Thus, Flynn had statutory justification for detaining Harris and requesting that he either produce his driver's license or give his name and date of birth. He also had statutory justification for expecting Harris to comply with his request. The issue remains whether Flynn violated Harris's Fourth Amendment rights when he asked him for his driver's license and other identifying information.

In arguing that there was no Fourth Amendment violation and that the trial court erred in suppressing the evidence against Harris, the State relies upon *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In *Berkemer*, 468 U.S. 420, 437, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (footnotes omitted), the United States Supreme Court, in determining that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for purposes of the *Miranda* rule, analogized the

usual traffic stop to a *Terry* stop and stated in pertinent part:

> [D]etention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way.

\* \* \* \* \*

Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni–Ponce*, 422 U.S. 873, 881 [95 S.Ct. 2574, 45 L.Ed.2d 607] (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'" *Ibid.* (quoting *Terry v. Ohio, supra,* at 29, 88 S.Ct. 1868.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.

Our supreme court has also applied the *Terry* doctrine in the context of a traffic stop. In *Platt v. State,* 589 N.E.2d 222, 225–26 (Ind.1992), our supreme court stated:

> As a general rule, automobile drivers are not shorn of their fourth amendment protections when they leave their homes and enter their automobiles. *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). However, "there is nothing *automatically* unconsti-

tutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking." *Luckett v. State* (1972), 259 Ind. 174, 179, 284 N.E.2d 738, 741 (emphasis in original),

The so called "stop and frisk" doctrine announced in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), has allowed courts to gauge the reasonableness of particular investigative stops by striking "a balance between the public interest [behind the investigation] and the individual's right to personal security from arbitrary interference from law officers." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). Where the public interest served by the officer's investigation is great and the intrusion on individual privacy is small, investigative stops of limited duration and "reasonably related in scope to the justification for their initiation" have been upheld. *Id.* at 881, 95 S.Ct. at 2580 (quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884). "To justify a warrantless intrusion, the police officer need not have probable cause to make an arrest, but must 'point to specific and articulable facts which, taken together with rational inferences from those facts,' reasonably warrant intrusion upon an individual's right of privacy." *Gipson v. State,* (1984), Ind., 459 N.E.2d 366, 368 (quoting *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880). If the facts known by the police at the time of the "stop" are such that a man of reasonable caution would believe that the action taken was appropriate, the command of the fourth amendment is satisfied. *Id.* at 368.

Applying *Berkemer* and *Platt* to the facts of this case, we conclude that there was no Fourth Amendment violation and that the trial court erred in granting Harris's motion to suppress.[5] The initial stop of Harris's truck was justified due to the unsafe condition of the trailer. In addition, because Flynn's intention in pulling over the vehicle

---

5. *McSwain* and *Chatton* are factually distinguishable from this case and are therefore inapplicable and unpersuasive. In *McSwain* and *Chatton,* the reasons for the initial stop of each vehicle had dissipated by the time each officer encoun-

tered the driver of the vehicle pulled over. Here, Flynn had more than a reasonable suspicion that Harris was operating an unsafe vehicle in violation of a state statute at the time he encountered Harris.

was to issue a warning and instruct the driver to have the vehicle fixed, it was necessary for Flynn either to see Harris's driver's license or to know Harris's proper name. Flynn's request for identifying information was a small but necessary intrusion on Harris's individual privacy, and that intrusion was reasonably related in scope to the justification for the intrusion. Moreover, when Flynn asked Harris for his name, Harris repeatedly gave Flynn false information. Harris's actions in this regard gave rise to a reasonable suspicion by Flynn that Harris may have committed, was committing, or was about to commit a crime and provided additional justification for Flynn to further detain and question Harris.

Based on the foregoing, we conclude that the trial court erred in suppressing the evidence against Harris.

Judgment reversed and remanded.

NAJAM and MATTINGLY, JJ., concur.