

**FILED**

Apr 29 2015, 9:49 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Noah T. Williams
Monroe County Public Defender

Stuart K. Baggerly
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# I N   T H E
# COURT OF APPEALS OF INDIANA

Andre C.T. Wells,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 29, 2015

Court of Appeals Cause No.
53A04-1402-CR-61

Appeal from the Monroe Circuit
Court; The Honorable Teresa D.
Harper, Judge;
53C09-1209-MR-857

**May, Judge.**

[1]     Andre C.T. Wells appeals his conviction of murder. He raises three issues for our review:

1.      Whether the trial court abused its discretion when it admitted recordings of Wells' statements to Brian Thompson;

2.      Whether the trial court abused its discretion when it admitted evidence regarding Wells' alleged plot to kill Brian Thompson; and

3.      Whether the trial court abused its discretion when it admitted testimony concerning cell phone towers and the potential locations of cell phones relevant to the crime.

[2]     We affirm.

## Facts and Procedural History[1]

[3]     In October, 2010, Wells lived with his mother, Melissa, his brother, A., and his stepfather, Robin Sowders. Melissa worked at a resort in Bloomington. On October 23, Melissa left to go to work and noted Robin was intoxicated. She called Wells and asked him to spend time with Robin, but not to bring Robin to her place of employment.

[4]     After Wells and Robin drank wine and smoked marijuana, Wells, Robin, and Wells' girlfriend Tristiny, went to Melissa's place of employment. Robin and

---

[1] We held oral argument on this matter on April 1, 2015, at the University of Southern Indiana. We thank the students, faculty, and staff of the University for their hospitality and counsel for their excellent advocacy.

Melissa argued, and Wells took Robin home. Wells then went with Tristiny to his father's house.

[5] After he arrived home, Robin texted and called Melissa multiple times. At one point, Robin told Melissa he was going to kill A., who was at the house with Robin. Melissa then went home and retrieved A., and the two spent the night in a hotel. Melissa called Wells and told him to "handle the situation." (Tr. at 553.) Wells went to Robin's house, wrapped his own hands in duct tape, and beat Robin and stomped on him.

[6] The next morning a friend discovered Robin, who was still alive, in the house. The friend called the police. At the same time the police surveyed the scene, Melissa and A. arrived at the police station to file a protective order against Robin. Robin was transported to Methodist Hospital and died a short time later. The police interviewed Wells, who denied involvement in the crime.

[7] A few days later, Wells told his friend, Brian Thompson, that he had killed Robin. A few days after that conversation, Thompson went home with Wells, so Wells could retrieve money and clothes to leave for Florida. Wells also took some tools, a red metal toolbox, and a clarinet from the residence, and he sold those items to Jeremy Kopp. Wells told Kopp he was moving to Florida because "he'd been in an altercation . . . [and] the guy was in the hospital." (*Id.* at 611.) Wells ultimately did not leave for Florida because Melissa told him it would make him look guilty.

[8] By early 2011, police began to focus on Wells as a suspect in Robin's murder based on cell phone records and Wells' Facebook post which read, "I'm still free." (*Id*. at 440.) Around the same time, police stopped Thompson for driving with a suspended license. In order to escape prosecution, Thompson told police Wells told him Wells killed Robin, and Thompson offered to wear a wire to record Wells' confession. In September and October 2011, Thompson recorded three conversations during which Wells made inculpatory statements.

[9] In January 2012, Thompson told Kopp that the tools and clarinet Kopp bought from Wells came from Robin's house. Kopp then went to the police and told them about his transaction with Wells. The police arrested Wells for murder in September 2012.

[10] Later in the fall of 2012, Wells was incarcerated with Jamaal Jefferson. Wells told Jefferson he killed Robin. He told Jefferson the only reason he had been charged with murder is because Thompson wore a wire and recorded his statements. Wells asked Jefferson if Jefferson could have a man killed, and Jefferson indicated he could. Wells then gave Jefferson Tristiny's phone number and said to contact Wells through her. On his release from incarceration, Jefferson told police about Wells' statements.

[11] Prior to trial, Wells filed a motion to suppress the recordings of his conversations with Thompson, which was denied. He contemporaneously objected to their admission during trial. Wells also objected during trial to

Jefferson's testimony and to the testimony regarding the location of different cell phones relevant to the case. The jury found Wells guilty of murder.

## Discussion and Decision

[12] We typically review allegations of error in the admission of evidence for an abuse of discretion, which occurs only when the trial court's ruling is "clearly against the logic, facts, and circumstances presented." *Kindred v. State*, 973 N.E.2d 1245, 1252 (Ind. Ct. App. 2012), *trans. denied*. We consider only the evidence in favor of the trial court's ruling, *Sallee v. State*, 777 N.E.2d 1204, 1210 (Ind. Ct. App. 2002), *trans. denied*, and we will not reverse the decision to admit or exclude evidence if that decision is sustainable on any ground. *Crawford v. State*, 770 N.E.2d 775, 780 (Ind. 2002).

### *1.* *Recordings*

[13] During Wells' trial, the State introduced into evidence recordings of Thompson and Wells discussing the details of Robin's murder. Wells filed a pre-trial motion to suppress the recordings, which was denied, and he contemporaneously objected at trial. The trial court ruled the recordings were admissible under Ind. Evidence Rule 403. On appeal, Wells attacks the trial court's decisions with four different arguments, which were also presented before the trial court and are discussed below.

### A.    Fifth Amendment, Section 1, Article 14, and Miranda Warning

> Under the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution, persons shall be free

from being compelled to make disclosures which might subject them to criminal prosecution or aid in their conviction. *Hastings v. State*, 560 N.E.2d 664, 667 (Ind. Ct. App. 1990), *trans. denied*. In protection of the right against self-incrimination, the United States Supreme Court's opinion in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Such procedural safeguards include an advisement to the accused that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him. *Id*. at 479. Miranda warnings are only required, however, where a suspect is both in custody and subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

*P.M. v. State*, 861 N.E.2d 710, 713 (Ind. Ct. App. 2007).

[14] Miranda warnings are meant to preserve the Fifth Amendment rights of a person during "incommunicado interrogation of individuals in a police-dominated atmosphere." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). The "police dominated atmosphere" has been found to generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id*. at 467. The requirement to administer a *Miranda* warning attaches only when "there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994).

[15] In analyzing whether a person was "in custody," we must "examine all of the circumstances surrounding the interrogation," but ultimately we must determine whether there was a "'formal arrest or restraint on freedom of

movement' of the degree associated with a formal arrest." *Id*. (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Interrogation under *Miranda* refers not only to express questioning but "also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "Coercion is determined from the perspective of the suspect." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).

[16] Wells argues his recorded conversations with Thompson violated his Fifth Amendment and Section 1, Article 14[2] rights against self-incrimination because Thompson was an agent of the police and, thus, Wells should have been given a *Miranda* warning before speaking with Thompson. Wells contends, because he was on house arrest at the time of his conversations with Thompson, he "should be deemed to have been in custody" because his "movements were monitored by agents of the State, he was forbidden from leaving his home without authorization, and he was under the threat of incarceration for violation of the rules of home detention." (Br. of Appellant at 13.) Therefore,

---

[2] Wells mentions the admission of the wiretap recordings violates his rights under Article 1, Section 14 of the Indiana Constitution, however, he makes no argument to that effect. Thus he has waived any such argument. *See* Indiana Appellate Rule 46(A)(8)(a) (appellate argument must be a cogent argument supported by citations to authority [and] statutes); *and see West v. State*, 755 N.E.2d 173, 181 (Ind. 2001) (failure to make a cogent argument waives issue from appellate court's consideration).

Wells asserts, the trial court abused its discretion when it admitted the recordings.

[17] In its response, the State cites *Perkins*, in which the United States Supreme Court rejected "the argument that *Miranda* warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent." 496 U.S. at 297. The *Perkins* Court further held, "placing an undercover agent near a suspect in order to gather incriminating information" does not violate the Fifth Amendment. *Id*. at 298.

[18] The State analogizes the facts in the instant case to those in *State v. Ashley*, 661 N.E.2d 1208 (Ind. Ct. App. 1995). In *Ashley*, a confidential informant, Bell, visited Ashley while Ashley was in jail. Bell recorded a conversation during which Ashley "told Bell that there was a white bucket near a freezer in the basement with old rugs on it which needed to 'disappear.'" *Id*. at 1210. In that bucket, Bell found the contents of a safe, which resulted in Ashley being charged with Class D felony receipt of a stolen safe.

[19] Ashley argued admission of the statements to Bell violated his Fifth Amendment rights. We held Ashley's Fifth Amendment rights were not violated based on the holding in *Perkins* and added, "Ashley voluntarily appealed to Bell to help remove the incriminating evidence. We find that Bell's visit to the jail was a 'mere strategic deception' in which Ashley put his misplaced trust into one he believed to be a friend." *Id*. at 1212. We agree with the State that *Ashley* and *Perkins* control the outcome in the instant case, as the

"situation in which Thompson visited [Wells] at his apartment was not a police-dominated atmosphere, nor did Thompson in any way coerce [Wells] into giving the statement." (Br. of Appellee at 17.)[3]

## B. Indiana Evidence Rule 403

[20] Evid. R. 403 provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Wells argues the trial court abused its discretion when it admitted the recordings of his conversations with Thompson because "the probative value of the recordings was substantially outweighed by the danger of unfair prejudice." (Br. of Appellant at 15.)

[21] Wells asserts the probative value of the recordings was reduced because the recordings were incomplete and "the procedure used to obtain the recordings was deficient." (*Id.*) Wells points to Detective Karr's testimony that the procedure by which the recordings were made was not typical, specifically concerning Thompson's control over the recording device. Wells claims the record indicates, "Thompson was computer literate and had sufficient time between making the recordings and turning them in to Det. Karr to complete the simple procedure needed to access - and potentially alter or delete - Wells'

---

[3] Wells also argues the recordings were inadmissible because he felt threatened by Thompson's relation of threats from Robin's family and his Fourteenth Amendment right to due process was violated. However, as we have concluded Thompson's surveillance was not "police activity," Wells' argument fails. *See Light v. State*, 547 N.E.2d 1073, 1077 (Ind. 1989) (to hold a confession involuntary under the Fourteenth Amendment, a person must demonstrate coercive policy activity), *reh'g denied*.

recorded statements." (*Id.* at 16.)[4]  However, during trial, Wells stipulated to the incompleteness of the recordings, acquiesced to the trial court's procedure for dealing with gaps in the recordings, and acknowledged he was one of the voices on the recordings.  Therefore, any error in the admission of the wiretap recordings based on Evid. R. 403 is invited error.  *See Barnett v. State*, 24 N.E.3d 1013, 1017 (Ind. Ct. App. 2015) (party is estopped from taking advantage of error he invited during trial).[5]

## 2.     *Plot to Kill Thompson*

[22]  During trial, the State introduced evidence Wells conspired with a fellow inmate, Jamal Jefferson, to kill Thompson.  Wells argues the trial court abused its discretion when it admitted the evidence because the evidence violated Evid. R. 404(b), which states, in relevant part:

> (1)  Prohibited Uses: Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2)  Permitted Uses: . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

---

[4] Thompson testified he was computer literate and understood how to use Microsoft Office products.  (Tr. at 604.)  Detective Kerr testified Thompson would deliver the recording device to him after he recorded conversations with Wells, but there did not exist a set time schedule for making or delivering the recordings. (*Id.* at 443-44.)

[5] Similarly, Wells argues the wiretap recordings were inadmissible because portions of them were unintelligible.  As he stipulated to the incompleteness and agreed with the trial court's procedure for dealing with the gaps in the transcript, any error in their admission was invited.  *See Barnett*, 24 N.E.3d at 1017 (party is estopped from taking advantage of error he invited during trial).

In determining the admissibility of an act under Evid. R. 404(b), the trial court must:

> First . . . "determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act." Second, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. And third, the court must "balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403."

*Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009), *reh'g denied*.

[23] Wells argues the State did not present sufficient proof to support its claim that Wells conspired with Jefferson to have Thompson killed because it "presented only the testimony of Jamal Jefferson, a federal inmate who has previously worked as an informant in exchange for a reduction of his sentence." (Br. of Appellant at 19-20.)

[24] Contrary to Wells' assertions, the State presented evidence to corroborate Jefferson's testimony that Wells attempted to conspire with him to kill Thompson, including:

> 1) Jefferson's account of Defendant's murder of Robin was almost exactly the same as Defendant's statement to Thompson: Robin threatened [A.'s] life, Defendant drove to the residence, Defendant wrapped his hands in duct tape, and Defendant beat and stomped Robin; 2) Jefferson knew about Thompson and the secret recordings; 3) Jefferson had Tristiny's phone number in his possession as a means to communicate about killing Thompson.

(Br. of Appellee at 27.) We hold the trial court did not abuse its discretion when it admitted the evidence of the murder for hire plot. *See Matthews v. State*,

866 N.E.2d 821, 825 (Ind. Ct. App. 2007) (Threats to kill a witness "are viewed as admissions of guilt and therefore are relevant to demonstrate an accused's guilty knowledge."), *trans. denied*.[6]

### 3. *Cell Phone Tower Data*

[25] During trial, the State offered evidence regarding the location of certain cell phones relevant to Robin's murder, including those used by Wells, Melissa, and Robin. The State offered the testimony of David Salyer, an AT&T network engineer, as a skilled lay witness under Evidence Rule 701.[7] Wells objected to the testimony under Evid. R. 403[8] and Evid. R. 701. Wells argues the evidence was highly prejudicial because the jury likely overestimated the value of Salyer's testimony regarding the location of Well's cell phone and Melissa's cell phone and the inactivity of Robin's cell phone after the time the police believed Wells attacked him. Wells also argues the evidence lacked probative value

---

[6] Wells also argues the evidence regarding the murder for hire plot was inadmissible under Evid. R. 403 because it was more prejudicial than probative. However, as we noted in our analysis of Wells' Evid. R. 404(b) argument, the evidence was probative under *Matthews* and the State corroborated Jefferson's testimony with additional evidence. Therefore, the trial court did not abuse its discretion when it admitted the evidence of the murder for hire plot.

[7] Evid. R. 701 states, in relevant part:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

[8] Evid. R. 403 prohibits the admission of evidence when its probative value is substantially outweighed by its prejudice.

because "this type of location testimony has been recognized to have serious limitations." (Br. of Appellant at 24) (footnote omitted).

[26] We need not determine whether the evidence should have been admitted. "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadows v. State*, 785 N.E.2d 1112, 1121 (Ind. Ct. App. 2003), *trans. denied*. In the instant case, the State presented evidence Wells discussed his involvement in Robin's murder with three people - Thompson, Jefferson, and Kopp. In addition, the State presented wiretap evidence where Wells admitted to killing Robin. As the State presented sufficient evidence to prove Wells committed murder, any error in the admission of the cell phone evidence was harmless error.

## *Conclusion*

[27] The trial court did not abuse its discretion when it admitted the wiretap evidence and the evidence of a murder for hire plot. In addition, if the admission of the cell phone location information was error, it was harmless. Accordingly, we affirm the judgment of the trial court.

[28] Affirmed.

Baker, J., and Barteau, S.J., concur.