**UNITED STATES of America**

v.

**John Douglas MacCREADY.**

**Crim. No. A–94–CR–170JRN.**

United States District Court,
W.D. Texas,
Austin Division.

March 6, 1995.

Gerald Carruth, U.S. Attorney's Office, Austin, TX, for U.S.

Abe Hernandez, Jr., Federal Public Defender, Austin, TX, for MacCready.

## ORDER

NOWLIN, District Judge.

Before the Court is Defendant's Motion to Suppress and Request for Evidentiary Hearing, filed December 27, 1994, Government's Response to Defendant's Motion to Suppress, filed January 13, 1995, Defendant's Amended Motion to Suppress Evidence and Reply to Government's Response to Defendant's Motion to Suppress, filed January 20, 1995 and the Government's Response to Defendant's Amended Motion to Suppress, filed January 26, 1995. A hearing on this matter was held on February 14, 1995, and this Order recites the oral ruling made by the Court.

## I. UNCONTESTED FACTS

On June 12, 1994, Defendant was a rear seat passenger in a motor vehicle stopped for speeding by Texas State Troopers. The vehicle had Indiana License plates and the driver had an Indiana license identifying him as Christopher D. Wilson. The front seat passenger produced a Kentucky driver's license identifying him as William G. Deming, and the Defendant produced a Texas ID card which falsely identified him as Johnathon Michael Christian of Arlington, Texas.

During the stop, the driver and passengers were asked to exit the vehicle. Officers requested and were given consent to search the vehicle by the driver, Mr. Wilson.[1] Defendant, however, explicitly told officers that he

---

1. According to the Government, this consent was unconditional; however, the Defendant claims that Mr. Wilson consented to the search as long as his passengers agreed.

did not consent to the search of his backpack, located in the rear seat of the vehicle. According to the Government, officers removed the backpack from the car, placed it on the ground, and proceeded to search the vehicle.[2]

After searching the vehicle, one of the officers picked the backpack up off the ground and started to return it to Defendant. The officer felt the bulge of a hard object in the outer pocket and asked the Defendant to identify it. The Defendant identified the bulge as a tattooing pen; however, the officer believed it was a gun and proceeded to unzip the outer cargo pocket of the backpack, revealing a Smith and Wesson .357 Magnum revolver. The serial numbers on the revolver had been obliterated and the weapon was fully loaded.

The Defendant was arrested and charged with a violation of the Texas Penal Code § 31.11, which prohibits the possession of any tangible personal property knowing the serial number has been removed, altered or obliterated. After being fingerprinted, Defendant's true identity as a prior convicted felon was discovered.

## II. MOTION TO SUPPRESS

Defendant argues that the firearm, seized from his person on June 12, 1994, should be suppressed because officers searched his backpack without a warrant or other lawful authority in violation of his Fourth Amendment rights. The Government argues that the warrantless seizure of Defendant's firearm should be upheld because (1) the driver consented to the search of the vehicle and such consent extends to all containers found in the vehicle, including the backpack; and/or (2) the seizure of the firearm was justified under the "plain-touch" exception to the warrant requirement of the Fourth Amendment.

### A. *The Scope of the Driver's Consent*

The Government argues that the driver's general consent to search the automobile extends to all containers found in the vehicle, including the Defendant's backpack. The Defendant responds that the driver limited the scope of his consent by agreeing to the

search so as long as the other passengers did not object. Defendant also contends that, even if the driver of an automobile gave a general consent to search, a passenger can still deny consent to search his personal belongings.

Generally, police do not have to make a separate request for permission to search each closed container found in a vehicle. *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). However, the scope of the consent can be limited. *Id.* Furthermore, although neither the prosecution nor the defense have cited a case on point, the Fifth Circuit has at least implied that the passenger of a vehicle may prevent police from searching a container that is his own personal property. *See United State v. Crain*, 33 F.3d 480, 484 (1994) (implying that a passenger of an automobile can prevent the search of his own belongings when it upheld the legality of a consent search because none of the passengers attempted to limit the scope of the consent).

In the present case, the Court finds that the driver's consent does not justify the officers search of the Defendant's backpack. According to the Defendant, the driver limited the scope of the search by conditioning his consent on the consent of the passengers. If this is true, then under *Jimeno*, the driver's consent does not justify a search of the Defendant's backpack. However, even if the driver did not limit the scope of the search, the Defendant clearly objected to the search of his personal belongings. Common sense and the implications of case law suggest that a driver's consent to the search of a vehicle does not, by itself, allow officers to search the personal belongings of a passenger when that passenger specifically objects at the time of the search.

### B. *The "Plain–Touch" Exception*

The Government argues that officers may lawfully seize weapons and other contraband detected through the sense of touch during a protective patdown search. It argues that a

**2.** Defendant claims that the officers threw the backpack at him before conducting the search.

*Terry* investigative detention was reasonable under the totality of the circumstances.[3]

Defendant argues that the three occupants of the automobile were neither searched nor patted down for weapons; therefore, this was not a *Terry* investigation because the officers were not concerned for their safety. Defendant also argues that the officer had no legal authority to seize the gun because he had no probable cause to believe that the gun was contraband or evidence of a crime. To support this contention, Defendant argues that the occupants of the vehicle were obviously traveling, and could legally carry a weapon. Texas Penal Code § 46.02(b)(3).[4]

■ Searches and seizures of motorists who are *suspected* of criminal activity are to be analyzed under the framework established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of this experience that *criminal activity may be afoot'* the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson,* —— U.S. ——, ——, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993) (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). "*Terry* further held that '[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.' " *Id.* The purpose of the search is not to discover evidence and "must

be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' " *Id.* However, if while conducting a legitimate *Terry* search, an officer should discover contraband other than a weapon, he is not required to ignore it. *Michigan v. Long,* 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983).

■ Recently, the Supreme Court has adopted the "plain-feel" or "plain-touch" doctrine. *See Minnesota v. Dickerson,* —— U.S. ——, ——, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). Analogizing to the "plain view" doctrine, the Court in *Dickerson* held that an officer is not required to ignore contraband discovered through his sense of touch during an otherwise valid search.[5] *Id.* at ——, 113 S.Ct. at 2137. However, the incriminating character of an item must be immediately apparent; otherwise, an officer would be engaging in a search outside the confines of the "plain-touch" doctrine. *See Id.* at ——, 113 S.Ct. at 2138–39 (holding that the search of a suspect's pocket was not constitutionally valid under the "plain-touch" doctrine where "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket' "). Furthermore, before actually seizing an item, the officer must have probable cause to believe that it is contraband. *Id.*

■ In the present case, officers did not merely suspect criminal activity but actually observed the automobile violate a traffic law. Therefore, it is undisputed that the automobile was legally stopped and seized pursuant to a legitimate traffic stop.[6] It is also undis-

---

3. The Government argues that the driver and the passengers appeared nervous and were apparently members of a neo-Nazi, "skinhead," white-supremacist organization commonly associated with "hate crimes" and other acts of violence.

4. The Texas Penal Code states that "[i]t is a defense to prosecution under this section (unlawfully carrying weapons) that the actor was, at the time of the commission of the offense . . . traveling." Texas Penal Code § 46.02(b)(3).

5. The rationale of the plain view doctrine is that there is no invasion of a legitimate expectation of privacy when contraband is left in open view and observed by officers from a lawful vantage point.

*Dickerson,* —— U.S. at ——, 113 S.Ct. at 2137. Seizure in such a case is justified since "resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment." *Id.*

6. Although theoretically distinct from cases in which motorists are merely suspected of some criminal conduct, both the Supreme Court and the Fifth Circuit have used *Terry* to analyze cases in which motorists were stopped for actual traffic violations. *United States v. Shabazz,* 993 F.2d 431, 435 (5th Cir.1993). In such a case, officers are allowed to seize and temporarily detain a vehicle and its occupants. *Id.* During the stop,

puted that the officers engaged in a valid consensual search of the automobile. Although this consent would not allow them to search the backpack, it would not be a Fourth Amendment violation to remove the backpack and hand it to the Defendant during the course of an otherwise valid search of the car. Therefore, the officer would have felt the gun from a "lawful vantage point" and the rationale behind the plain view doctrine would apply.[7]

The next issue is whether the identity of the lump in the backpack was immediately apparent or whether the officers had to squeeze or manipulate the backpack in order to identify the item as a firearm. In this regard, the Government offered the testimony of the two officers involved in the stop. They both stated that the identity of the item was immediately apparent and that Trooper Garrison, the officer who discovered the weapon, did not intentionally squeeze or manipulate the backpack in any way. In contrast, the Defendant offered the testimony of Christopher Douglas Wilson, the driver of the vehicle in question. Mr. Wilson testified that Trooper Garrison squeezed and manipulated the backpack in order to determine whether the lump was actually a firearm. After evaluating the credibility and demeanor of the witnesses, the Court finds that the presence of the firearm was immediately apparent and the officer did not squeeze or manipulate the backpack in order to determine its identity.

Finally, the court must determine whether the officer had probable cause to believe that the gun was contraband. Defendant argues that the officer did not have probable cause

to believe that the defendant's possession of the gun was illegal because (1) the officer clearly knew the occupants of the vehicle were traveling and that it was not against the law for travelers to be in possession of the gun, and 2) at the time, the officers did not know the Defendant was a convicted felon. However, the officers testified that they had reason to believe that the occupants of the vehicle, including the Defendant, were members of a neo-Nazi, "skinhead," white-supremacist organization commonly associated with "hate" crimes and other acts of violence. Furthermore, the officers testified that the driver and passengers appeared extremely nervous, and their responses to routine questions did not coincide with their body language and eye contact with each other. Based upon this evidence the Court finds that the officers had probable cause to believe the firearm was contraband illegally in the possession of the Defendant.[8]

## III. CONCLUSION

Based upon the foregoing, the Court finds that the Motion to Suppress should be denied.

IT IS THEREFORE ORDERED that the Defendant's Motion to Suppress and Defendant's Amended Motion to Suppress Evidence are hereby DENIED.

"an officer can request a driver's license, insurance papers, vehicle registration, run a computer check theron, and issue a citation." *Id.* While officers are waiting for the results, they are allowed to conduct questioning and engage in consent searches as long as it does nothing to extend the duration of the initially valid seizure. *Id.*

7. Most of the cases dealing with the "plain-touch" doctrine involve patdown searches pursuant to *Terry.* Perhaps because of this, the Government argues that the officers were engaging in a patdown search pursuant to *Terry* when the firearm was discovered. The Defendant, on the other hand, argues that the officers were not concerned for their safety and therefore could

not have reasonably conducted a patdown search of the backpack.

However, it is not necessary for the officers to have conducted a patdown search, pursuant to *Terry,* in order for the "plain-touch" doctrine to apply. Under the rationale of the plainview doctrine, the initial question is whether the officer was in a "lawful vantage point" when he felt the gun in the backpack.

8. This finding supports the officers' initial temporary seizure of the firearm. Once the officers discovered that the serial number had been obliterated, they had probable cause to arrest the Defendant and seize his belongings.