**STATE of Indiana, Appellant–Plaintiff,**

v.

**Susan K. FRIEDEL, Appellee–Defendant.**

**No. 76A05–9808–CR–410.**

Court of Appeals of Indiana.

Aug. 17, 1999.

vit of Michael Phelps—was subsequently ordered stricken by the trial court.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant State of Indiana (State) appeals the trial court's grant of the defendant, Susan K. Friedel's (Friedel), motion to suppress.

We affirm.

### ISSUE

The State raises one issue for our review, which we state as follows: whether the trial court erred in granting Friedel's motion to suppress all items found as a result of a search of her purse.

### FACTS AND PROCEDURAL HISTORY

On December 12, 1997, Trooper Smith (Smith) of the Indiana State Police stopped a vehicle in which Friedel was a passenger. Smith stopped the vehicle with the intention of writing a traffic citation because the vehicle was being operated with only one headlight. After stopping the vehicle, Smith ran a computer check of the driver, Ryan Underwood's (Underwood), criminal history and discovered that Underwood had a number of prior charges but no outstanding warrants. Trooper Smith called for back up and Deputy Araque (Araque) of the Steuben County Sheriff's Department shortly arrived on the scene.

The vehicle was occupied by Underwood, Friedel and her child, and one to two other

male passengers. One or both of the officers asked Underwood's permission to search the vehicle. Underwood asked what the officers were searching for and they responded that they wanted to see if there were any drugs or guns in the van. Underwood indicated that there was nothing in the van and consented to the search. Thereafter all the passengers exited the vehicle. As the weather was cold, Smith allowed Friedel and her child to sit in his heated patrol car during the search.

While searching the van, Araque discovered a black purse on the floor behind the driver's seat where Friedel had been sitting. There was nothing unusual about the exterior of the purse and its contents could not be seen. The purse belonged to Friedel; however, she had not consented to a search of any of her personal property and neither officer asked for her consent. Upon searching the purse, Araque discovered a black leather wallet or pouch which was closed. He opened this pouch and found five clear plastic baggies containing a white powder residue which was later determined to be methamphetamine. He then handed the purse to Smith who further searched the purse and found a leather eyeglasses case. He opened the eyeglasses case and found marijuana.

After the purse was searched, Friedel was asked if it belonged to her and she acknowledged that it was her property. Friedel was subsequently arrested and charged with possession of a controlled substance, a Class D felony, Ind.Code, § 35–48–4–7(a), and possession of marijuana, a Class A misdemeanor, Ind.Code § 35–48–4–11(1).

On June 25, 1998, Friedel filed a motion to suppress the evidence produced as a result of the search of her purse. The motion to suppress was heard on June 26, 1998, and on July 2, 1998, the trial court issued an order granting Friedel's motion to suppress. Consequently, the State dismissed the charges pending against Friedel without prejudice and brought this appeal.

## DISCUSSION AND DECISION

The State appeals the trial court's order granting Friedel's motion to suppress all items discovered as a result of the search of her purse. The State argues that Friedel does not have standing to object to the search and further, that the search was constitutional and the trial court erred in granting the motion to suppress. Friedel argues that the State has waived its objection to standing and that she does have standing to bring a motion to suppress. She also claims that the State has waived the issue of whether the search was lawful under Article 1, § 11 of the Indiana Constitution. Finally, Friedel asserts that the search was unconstitutional and that the trial court properly granted her motion to suppress.

### I. *Standard of Review*

 In reviewing an appeal of the granting of a motion to suppress, we note that the State has the burden of demonstrating the constitutionality of its search. *State v. Ashley*, 661 N.E.2d 1208, 1211 (Ind.Ct. App.1995). Also, as this is an appeal of a negative ruling, we will reverse only when the evidence is without conflict and all reasonable inferences from the evidence lead to an opposite conclusion than that which was reached by the trial court. *Id.* On review we consider only the evidence most favorable to the ruling and we will not reweigh the evidence or judge the credibility of the witnesses. *Id.*

 Here, the trial court entered an order granting Friedel's motion to suppress and included therein specific findings of fact and conclusions of law. Upon review, we accept the factual findings of the trial court unless they are clearly erroneous and the record lacks any facts or reasonable inferences to support them. *State v. Voit*, 679 N.E.2d 1360, 1362 (Ind.Ct.App.1997). The trial court determined that Friedel had standing to object to the search of her purse, and that the search of her purse was unreasonable under the Fourth Amendment of the United States Constitution and under Article 1, § 11 of the Indiana Constitution. The trial court reasoned that the search was unconstitutional because Friedel had not consented to the search of her purse and there was no other proper basis for the search.

## II. *Standing*

The State argues that Friedel does not have standing to object to the search by Araque and Smith. Friedel responds that the State has waived its objection to standing because it did not raise the issue in the trial court, and further, that she does in fact have standing to object to the search of her purse.

■ The State concedes that it did not raise the issue of standing in the trial court. "An issue cannot be raised for the first time on appeal." *McClendon v. State,* 671 N.E.2d 486, 489 (Ind.Ct.App.1996). Moreover, "[w]here the prosecution has failed to make any trial court challenge to standing, the government may not raise the issue for the first time on appeal." *Everroad v. State,* 590 N.E.2d 567, 569 (Ind.1992) (citations omitted).[1] Hence, the State has waived the issue of standing; however, waiver notwithstanding, the State's argument fails on its merits.

■ In order to challenge the constitutionality of a search, a defendant must have a legitimate expectation of privacy in that which is searched. *Peterson v. State,* 674 N.E.2d 528, 532 (Ind.1996), *cert. denied,* — U.S. —, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998).

> In reviewing whether a privacy expectation exists under a Fourth Amendment analysis, this Court also looks to whether the defendant has control over or ownership in the premises searched. . . . The burden is on the defendant challenging the constitu-

tional validity of a search to demonstrate that he had a legitimate expectation [of privacy] in the premises searched.

*Id.* at 533 (citations omitted).

The State specifically argues that Friedel does not have standing to challenge the search of Underwood's van by relying on the proposition that because a passenger in an automobile owned by another does not have a legitimate expectation of privacy in the automobile, he does not have standing to challenge a search of the vehicle. *Porter v. State,* 570 N.E.2d 1324, 1325 (Ind.Ct.App. 1991) (citing *Pollard v. State,* 270 Ind. 599, 388 N.E.2d 496 (1979)).[2]

■ Nevertheless, the question is not whether Friedel had standing to challenge the search of Underwood's automobile, but rather whether she has standing to challenge the search of her purse which was in Underwood's automobile. "Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times." *Wyoming v. Houghton,* — U.S. —, —, 119 S.Ct. 1297, 1304, 143 L.Ed.2d 408, 420 (1999) (Breyer, J., concurring).

It is undisputed that Friedel was the owner of her purse and, as Justice Breyer notes, a purse often contains very personal items. Thus, a purse is clearly a container in which a person has a legitimate expectation of privacy.[3] Consequently, Friedel, as the owner

---

**1.** The State argues that *Everroad* is distinguishable from the case at bar because in *Everroad:* 1) the trial court had not decided the standing issue; and 2) the defendants argued therein that because the State did not raise the issue of standing in the trial court, they did not have an opportunity to develop evidence to show they had standing to challenge the search of their mother's house. However, the *Everroad* court did not limit its holding to these circumstances and rather clearly held that issues of standing cannot be raised by the prosecution for the first time on appeal. Thus, we are unpersuaded by the State's attempt to distinguish the *Everroad* case.

**2.** The State cites *Porter* and *Pollard* in support of its argument that Friedel does not have standing. However, in *Porter* the defendant was a passenger in a vehicle in which the driver was arrested and the vehicle was subject to an inventory search. The search of the vehicle produced a

handgun found under an armrest in the back seat. After the handgun was discovered, Porter admitted it belonged to him. *Porter,* 570 N.E.2d at 1325. In *Pollard* our Supreme Court decided that the defendant had standing to challenge the constitutionality of a search of a vehicle that was titled in his wife's name but that he operated. *Pollard,* 388 N.E.2d at 503. Because the standing issue concerns the search of Friedel's purse and not the search of Underwood's van, neither one of these cases lends support to the State's position.

**3.** Other courts have held that defendants have a legitimate expectation of privacy in the contents of their purse and therefore, have standing to challenge a search of their purse. See *United States v. Welch,* 4 F.3d 761, 764 (9th Cir.1993) ("[T]here is no question that Welch had a reasonable expectation of privacy in the contents of her purse. Indeed, a purse is a type of container in

of the purse which was the subject of the search at issue, has standing to challenge the constitutionality of the search of her purse.

### III. *Fourth Amendment Analysis*

■ The Fourth Amendment of the United States Constitution provides:

The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment protections against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *Berry v. State*, 704 N.E.2d 462, 464–465 (Ind. 1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). "The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes and their belongings." *People v. James*, 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195, 197–198 (1994) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979)).

■ For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Berry*, 704 N.E.2d at 465. The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *State v. Farber*, 677 N.E.2d 1111, 1116 (Ind.Ct.App. 1997), *trans. denied.* However, where there is probable cause to believe that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment because of the existence of exigent circumstances arising out of the likely disappearance of the vehicle. *California v. Acevedo*, 500 U.S. 565, 569, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158–

159, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925)). Further, as long as the search is supported by probable cause, a warrantless search of a vehicle may also include a search of a container or package found in the vehicle. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

■ To determine if a governmental action violates the Fourth Amendment, the first inquiry should be "whether the action was regarded as an unlawful search and seizure under the common law when the Amendment was framed." *Houghton*, —— U.S. at ——, 119 S.Ct. at 1300. However, when "that inquiry yields no answer, we must evaluate the search and seizure under traditional standards of reasonableness by [comparing] ... the degree to which it intrudes upon an individual's privacy and ... the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* In *Houghton*, the Supreme Court concluded that the historical evidence showed "that the Framers would have regarded as reasonable (if there was probable cause) the warrantless search of containers within an automobile." *Id.*

The defendant in *Houghton* was a passenger in a vehicle which had been pulled over by a Wyoming Highway Patrol officer for a routine traffic stop. *Id.* at 1299. While questioning the driver, the officer noticed a hypodermic syringe in the driver's shirt pocket. *Id.* The driver admitted that he had the syringe to take drugs. *Id.* Based on this admission, the officers ordered the two female passengers out of the vehicle and searched the passenger compartment for contraband. *Id.* During the search of the vehicle, the officers found a purse on the back seat and found inside the purse a pouch and wallet containing methamphetamine and drug paraphernalia. *Id.*

■ Houghton challenged the search, but the trial court denied her motion to suppress and she was convicted. *Id.* at 1300. The Wyoming Supreme Court reversed the con-

which a person possesses the highest expectations of privacy."); *United States v. Jeffers*, 520 F.2d 1256, 1268 n. 17 (7th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656. (A

female defendant whose purse and boots were searched during a weapons search had standing to complain of an alleged Fourth Amendment violation.)

viction and held that the search was unconstitutional because the officers " 'knew or should have known that the purse did not belong to the driver,' ... and because 'there was no probable cause to search the passengers' personal effects and no reason to believe that contraband had been placed within the purse.' " *Id.* The United States Supreme Court, however, reversed the Wyoming Supreme Court's decision and concluded that "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 1304.[4] The Court reasoned that "the balancing of the relative interests weighs decidedly in favor of allowing searches of a passenger's belongings. Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property they transport in cars which 'trave[l] public thoroughfares.' " *Id.* at 1302 (citation omitted).

 The object of the search in the case at bar was guns and drugs;[5] however, the search was not based on probable cause but rather on Underwood's consent to the search of his vehicle. The State has not alleged herein, either in the trial court or on appeal, that there was probable cause to

search Underwood's vehicle or Friedel's purse.[6] The officers admitted that their sole motivation for searching Underwood's vehicle was the fact that he had a criminal history. This, standing alone, was not sufficient probable cause to search Underwood's vehicle,[7] and apparently, the officers realized this and consequently obtained Underwood's consent to search his van. A valid consent is also an exception to the warrant requirement. *Brown v. State,* 691 N.E.2d 438, 443 (Ind. 1998); *Farber,* 677 N.E.2d at 1116.

Thus, although the State refers us to *Houghton* in support of its position that the search of Friedel's purse was constitutional,[8] the *Houghton* decision is not dispositive here because the officers in *Houghton* had probable cause for the search (unlike the officers in the case at bar). Therefore, the ultimate issue that must be determined is whether Underwood's consent to the search of his vehicle constituted a valid consent to search Friedel's purse which was found in Underwood's vehicle.

### IV. *Consent to the Search of Friedel's Purse*

 The State asserts that Underwood's consent to search the van included consent to search Friedel's purse. The State argues

---

**4.** The permissible scope of a warrantless search of an automobile "is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross,* 456 U.S. at 824, 102 S.Ct. at 2157.

**5.** The trial court did not include a finding of fact in its order granting Friedel's motion to suppress that found that the object of the search was drugs or guns; however, Smith testified that he told Underwood he wanted to search his vehicle to see if any drugs or guns were inside the vehicle. (R. 33). Further, Araque testified that Underwood gave the officers consent to search the vehicle for drugs and guns. (R. 38). No evidence was presented at the hearing on Friedel's motion to suppress that contradicted the testimony of these two officers. Further, the trial court's findings do not conflict with this evidence, rather this issue (what the object of the search was) is simply not addressed in the trial court's findings of fact.

**6.** The traffic violation for which Underwood was first stopped was not a sufficient basis to search the vehicle and did not establish probable cause

for the search. The United States Supreme Court has recently held that absent probable cause or consent, a police officer is not justified in searching a vehicle during a routine traffic stop where the driver is issued only a traffic citation and is not arrested. *Knowles v. Iowa,* 525 U.S. 113, ——, 119 S.Ct. 484, 485, 142 L.Ed.2d 492 (1998).

**7.** However, "[a]n officer is permitted to search for weapons when 'he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.' " *Sweeney v. State,* 704 N.E.2d 86, 107 (Ind.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 2393, —— L.Ed.2d——, 67 USLW 3588, (citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Nonetheless, the officers herein do not contend that they were in any way concerned that Underwood was "armed and dangerous."

**8.** *Houghton* was decided by the United States Supreme Court on April 5, 1999, after the case at issue had been fully briefed by the parties. The State, however, filed a Citation to Supplemental Authority on April 14, 1999, pursuant to App. R. 8.4(B), citing this decision.

that Friedel's purse was a container within the van and that the officers were not required to seek separate consent to search each container in the vehicle. The State further argues that if Friedel did not want her purse searched, it was her obligation to identify the purse as her property and exclude it from the search.

█ The United States Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). Even in the absence of probable cause or exigent circumstances, a party may validly consent to a warrantless search. *Stabenow v. State,* 495 N.E.2d 197, 202 (Ind.Ct.App.1986) (citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *see also Sayne v. State,* 258 Ind. 97, 279 N.E.2d 196 (1972)).

█ Nonetheless, "where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.'" *Id.* (citing *Royer,* 460 U.S. at 497, 103 S.Ct. at 1324). However, because the circumstances surrounding the search may establish that the individual involved gave implicit consent by word or deed, it is not a requirement for a valid consent search to have the party's express consent. *State v. Jorgensen,* 526 N.E.2d 1004, 1006 (Ind.Ct.App.1988) (citations omitted).

Here, Underwood gave consent to search his vehicle and the officers ordered all of the passengers from the vehicle. The record is

unclear as to whether Friedel heard Underwood give the officers consent to search his vehicle and the trial court made no factual finding regarding this matter. It is clear, however, that Friedel was away from the vehicle while it was being searched as Friedel and her child sat in Smith's patrol car during the search due to the weather conditions. Friedel left her purse in the van during the search, neither officer sought her consent prior to searching through the purse and Friedel never consented to the search.

█The State argues that Underwood had actual authority to consent to the search of Friedel's purse because it was a container found in his vehicle. The State cites to *Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297, and argues that the officers did not exceed the scope of Underwood's consent by searching Friedel's purse as the scope of a search is defined by the expressed object of the search. Here, the object of the search was guns and drugs. However, the issue is not whether the purse was within the scope of the search, but whether Underwood had actual or apparent authority to consent to the search. Valid consent may be given by a third party who possesses common authority over the property at issue. *Illinois v. Rodriguez,* 497 U.S. 177, 179, 110 S.Ct. 2793, 2796, 111 L.Ed.2d 148 (1990) (citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). "Common authority is not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes ..." *Brown,* 691 N.E.2d at 443 (citation omitted).[9]

9. The State cites *Brown,* 691 N.E.2d 438, in support of its conclusion that "the issue in this case is whether Underwood had the authority to consent to [the] search of the van, not the items contained therein." In *Brown,* our supreme court concluded that the defendant's girlfriend had the authority to allow the police to search her home and bedroom, which she shared with the defendant. *Id.* at 444. The defendant argued that the trial court improperly admitted into evidence a knife, gloves and a ring found at the home. *Id.* at 443–444. The knife was discovered in plain view after the police were allowed in the bedroom by the girlfriend. *Id.* at

442. The defendant's girlfriend gave the police his driving gloves and finally, the ring was discovered on a cosmetic table in the bedroom after the girlfriend had consented to a search of the bedroom. *Id.* The defendant argued that the police could not have reasonably believed that the girlfriend had common authority over his personal effects. In response the Court concluded: "the issue is not whether the girlfriend had common authority over defendant's personal effects, but whether the girlfriend had common authority over the home, and specifically over the bedroom." However, the distinction between the present case and the *Brown* decision is that

The trial court properly found that there was no evidence in the record that in any way indicated that Underwood jointly owned, used, possessed or controlled Friedel's purse. Further, there was no evidence that Underwood was authorized by Friedel to allow a search of her purse. Consequently, it is quite clear that Underwood did not possess the actual authority to consent to a search of Friedel's purse.

The State further argues that Underwood possessed apparent authority to consent to the search of Friedel's purse. "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant consent." *Welch*, 4 F.3d at 764. In determining whether the officers held a reasonable belief, the Supreme Court has instructed:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment … 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists.

*Rodriguez*, 497 U.S. at 187, 110 S.Ct. at 2801.

In *Jimeno*, the Supreme Court applied the "objective reasonableness" test set out in *Rodriguez*, and concluded that after a police officer had received the driver's consent to search his automobile for narcotics, it was reasonable for the officer to believe that the consent included permission to search a brown paper bag on the floor of the car. *Id.* at 251, 111 S.Ct. at 1804.[10] The Court in *Jimeno* held that "if [the driver's] consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.*[11] However, the Court specifically noted that although it may be reasonable to search a paper bag on the floor of a vehicle, it may not be reasonable to search a locked briefcase found in the trunk of a car. *Id.* The point being that each case is dependent on what is an objectively reasonable belief for the officers to hold concerning the extent of a driver's consent in a particular situation.

Thus, the question becomes whether it was reasonable for Smith and Araque to believe that Underwood had the authority to consent to a search of Friedel's purse. We conclude that it was not. When the officers decided to search Friedel's purse they knew that it was a woman's handbag and that Friedel was the only woman in the vehicle. They also found the purse on the floor in the back seat where Friedel had been sitting. Under these circumstances, it was unreasonable for the officers to believe that Underwood had the authority to consent to a search of the purse especially "since a purse is generally not an object for which two or more persons share common use or authori-

in *Brown* the police did not search a container (i.e. wallet, purse, luggage, etc.) that belonged solely to the defendant to discover the evidence at issue, rather the police searched the bedroom the defendant shared with his girlfriend, with her consent, and therein discovered the disputed evidence.

10. The State also cites *U.S. v. Crain*, 33 F.3d 480 (5th Cir.1994). The *Crain* case concerned basically the same facts as the *Jimeno* decision and was decided in the same fashion. (The *Crain* court concluded that the driver's consent to search extended to a paper bag found under the seat.) Thus, the *Crain* decision is distinguishable

from the case before us for the same reasons *Jimeno* is distinguishable.

11. Based on this conclusion, the State contends that *Jimeno* stands for the proposition that once an officer has received consent to search a vehicle, he need not seek a separate consent to search each container found within the vehicle. *Id.* at 251, 111 S.Ct. at 1803. While this is accurate, the State fails to acknowledge that even though an officer does not have to obtain a separate consent to search each container found in a vehicle, an officer is still required to act reasonably when deciding whether the driver's consent extends to a particular container found within the vehicle.

ty."[12] *People v. James*, 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195, 203 (1994). Further, if the officers believed that Underwood had authority to control or open the purse without Friedel's consent simply because the purse was located in his vehicle, such a belief on the part of the officers would have been based on an inaccurate legal assumption. See *Welch*, 4 F.3d at 764. "Such an assumption would have been erroneous and would have reflected a mistaken belief as to the law." *Id.* And, because the apparent authority doctrine is only applicable when the facts believed by the officers would justify the search as a matter of law, "[a] mistaken belief as to the law, no matter how reasonable, is not sufficient." *Id.*

The State's reliance on *Canaan v. State*, 683 N.E.2d 227 (Ind.1997), *reh'g denied, cert. denied*, — U.S. —, 118 S.Ct. 2064, 141 L.Ed.2d 141, in support of its assertion that the officers reasonably believed that they had permission to search the purse left in the van, is misplaced. The *Canaan* court held that "the authority of [a] third party to consent to the search has been upheld when, by abandonment or otherwise, the person who is the target of the search no longer has a reasonable expectation of privacy in the premises." *Id.* at 231. In *Canaan*, the defendant was living with his brother and sharing a room with his nephew when his brother consented to a search of his bedroom. Our supreme court concluded that the brother's consent was valid because the brother had "common authority" over the premises. *Id.* Thus, the *Canaan* decision is distinguishable from the case before us for several reasons: 1) Friedel was never the "target" of the search; 2) the "third party" (Underwood)

never had "common authority" over Friedel's purse and never had authority to consent to the search; and 3) there is no indication that Friedel abandoned her property.

We also cannot agree with the State that Friedel's consent was implied by her failure to object to the search of her purse because "failure to protest ... a search does not constitute consent." *Snyder v. State*, 538 N.E.2d 961, 964 (Ind.Ct.App. 1989). Consent may not reasonably be implied from a passenger's silence or failure to object where the officer did not expressly or impliedly ask the passenger for consent to search. *United States v. Jaras*, 86 F.3d 383, 390 (5th Cir.1996); see also *State v. Suazo*, 133 N.J. 315, 323, 627 A.2d 1074 (1993). Additionally, although the State suggests otherwise, there was no indication in the record that Friedel abandoned her purse by leaving it in the van after she and her child were ordered out of the vehicle by the officers. Moreover, to show abandonment, the State must show that Friedel relinquished her property with no intention of reclaiming it. *Schaffner v. Benson*, 90 Ind.App. 420, 423–424, 166 N.E. 881, 883 (1929).

There appears to be no Indiana case directly on point addressing the issue of whether the consent of a driver to a warrantless search of his vehicle allows the police to search a passenger's purse found in the vehicle. However, other jurisdictions addressing the same situation have concluded that a driver's consent to a warrantless vehicle search was not a valid consent to search a passenger's personal property found in the vehicle.[13] Although there are some cases

**12.** By deciding this issue in this manner, we are not suggesting, as the State asserts, that the police would be required to determine whether the container is a "female" container or a "male" container, prior to the search of that container, but that if a specific container is usually associated with a particular gender, then that fact should be one of many factors the officer considers in deciding if the driver's consent reasonably extends to the container found in the vehicle. It is interesting to note that in the *James* case the driver of the searched vehicle was female and her two adult passengers were also female. *James*, 206 Ill.Dec. 190, 645 N.E.2d at 197. In that decision, the Illinois Supreme Court decided it was unreasonable for the offi-

cers involved to conclude that the driver's consent extended to a search of a purse found on the floor of the vehicle near where the front seat passenger had been sitting. The court did not conclude that the officer's actions were reasonable even though the driver was female and a purse is an item normally carried by females. Thus, matching the "gender" of the container with the driver does not automatically mean that a search of that container, based on the driver's consent, will be determined to be reasonable.

**13.** *State v. Younger*, 305 N.J.Super. 250, 702 A.2d 477 (1997) (although homeowner/wife consented to search of bedroom, she lacked authority to consent to search of closed change purse belong-

from other jurisdictions that differ from our

holding, for various reasons we find those decisions unpersuasive.[14]

ing to defendant/husband during search of home); *People v. Gonzalez,* 88 N.Y.2d 289, 644 N.Y.S.2d 673, 667 N.E.2d 323 (1996) (accomplice's sister could not give consent to search of defendant's duffle bag located in apartment defendant shared with accomplice and his sister where accomplice's sister had no apparent or actual authority to consent); *James,* 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195 (driver's consent to search of her vehicle did not reasonably extend to a search of passenger's purse where purse belonged exclusively to passenger); *State v. Caniglia,* 1 Neb.App. 730, 510 N.W.2d 372 (1993) (male driver's consent to search of vehicle did not extend to female passenger's make-up purse as make-up purse was not item that officers could have reasonably believed belonged to male driver); *Suazo,* 133 N.J. 315, 627 A.2d 1074 (where driver consented to search of vehicle but passenger told officer that red bag belonged to him, officer's reliance on driver's consent to search bag was unreasonable even if passenger did not object to search); *State v. Allen,* 254 N.J.Super. 62, 603 A.2d 71 (1992) (consent to search of vehicle by owner did not extend to suitcase in which she disclaimed ownership interest); *State v. Zachodni,* 466 N.W.2d 624 (S.D.1991) (husband's consent to search of vehicle was not valid consent for search of wife's purse); *State v. Williams,* 48 Or.App. 293, 616 P.2d 1178 (1980) (consent by owner for search of vehicle did not validate warrantless search of cassette tape case owned by passenger).

Federal jurisdictions have also held similarly. *Jaras,* 86 F.3d 383 (driver's consent to search of vehicle did not reasonably extend to search of passenger's suitcases where officers were told that suitcases belonged to passenger even though passenger failed to object to search); *United States v. Infante–Ruiz,* 13 F.3d 498 (1st Cir.1994) (driver's consent to search of car did not extend to passenger's briefcase); *Welch,* 4 F.3d 761 (companion who consented to search of the parties' rental car did not have actual or apparent authority to consent to search of defendant's purse).

14. ˙ The State refers us to *U.S. v. Lewis,* 24 F.3d 79 (10th Cir.1994). In *Lewis,* the tenth circuit determined that the officer did not exceed the scope of the driver's consent when searching the passenger's luggage, because: "(1) [the driver's] consent was framed in general terms (extending to the entire trunk and its contents); (2) the searching officer had no way to determine ownership of the luggage from its external appearance; and (3) nothing in the record reflects that [the passenger] interposed any contemporaneous objection to the search of his bag." *Id.* at 81. The *Lewis* court does not address whether the driver had actual or apparent authority to consent to the search of the passenger's luggage. Further, the court does not appear to apply or discuss the "objective reasonableness" test set forth by the United States Supreme Court in

*Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. The court simply concludes that the consent extended to the passenger's luggage for the previously enumerated reasons. The *Lewis* case is thus distinguishable from the case at bar because herein we have found that Underwood's consent did not extend, through actual or apparent authority, to Friedel's purse. Also, in this case, the officers could tell from the purse's external appearance and location in the vehicle that it was likely to belong to a female, backseat passenger. Finally, although the *Lewis* court found it important that the passenger did not object to the search of his luggage, our court, as well as other courts, have concluded that failure to object to a search does not constitute consent. *Snyder,* 538 N.E.2d at 964; *Jaras,* 86 F.3d at 390; see also *Suazo,* 133 N.J. at 323, 627 A.2d 1074. For these reasons *Lewis* is unpersuasive in our determination here.

In *United States v. MacCready,* 878 F.Supp. 976 (W.D.Tex.1995), the driver consented to a search of his vehicle; however, a passenger objected to a search of his backpack found in the vehicle and the fifth circuit concluded that the driver's consent did not justify a search of the defendant/passenger's backpack. *Id.* at 978. The holding of this court does not conflict with our decision herein. However, if *MacCready* is read to require that a passenger affirmatively object to prevent a search of his personal property, then that holding would be in conflict with binding Indiana precedent. *Snyder,* 538 N.E.2d at 964.

The State also refers us to *Henson v. Texas,* 915 S.W.2d 186 (Tex.App.1996), in which the Texas Court of Appeals found that a driver's consent to a search of his vehicle extended to a duffel bag belonging to a passenger. The *Henson* court applied the reasonableness standard and concluded that a reasonable person could conclude that the driver's consent extended to the passenger's luggage as the driver has opened the luggage and offered it to the trooper for inspection and the driver consulted with the passenger prior to consenting to the search. *Id.* at 193–194. Consequently, the *Henson* decision is factually distinguishable from the case before us.

In *Commonwealth v. Yedinak,* 450 Pa.Super. 352, 676 A.2d 1217 (1996), another decision the State refers us to, after the officers smelled a strong odor of marijuana, they requested the defendant consent to a search of his vehicle for drugs. The defendant consented and the officers found marijuana in a cigarette pack and a cough drop container. The *Yedinak* court, applying an objective reasonableness test, concluded that it was reasonable for the officers to search these containers which belonged to the defendant who had consented to the search. *Id.* at 358, 676 A.2d 1217. In *People v. Forte,* 234 A.D.2d 891, 652 N.Y.S.2d 446 (1996), the officers stopped a vehicle for speeding and while stopped, the officer noticed the passenger hide something under

Wherefore, we conclude that Underwood did not have actual or apparent authority to consent to a search of Friedel's purse. His consent to a search of his vehicle did not provide a valid consent for a search of Friedel's purse and it was unreasonable for the officers to conclude that it did. Thus, the warrantless search of Friedel's purse and ensuing seizure was, therefore, unauthorized, unreasonable and unconstitutional.

### V. *Indiana Constitution*

■ The State has failed to present an argument to the trial court or on appeal as to the reasonableness of the search under Indiana's Constitution. The State's only reference to the Indiana Constitution in its appellant's brief is the conclusory statement that "the search was reasonable under the constitutions of the United States and Indiana." Because the State has failed to provide a separate legal analysis addressing state constitutional search and seizure jurisprudence, the State has failed to preserve any argument it might have under the Indiana Constitution. *Stevens v. State*, 691 N.E.2d 412, 438 n. 17 (Ind.1997), cert. denied, — U.S. —, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998); *Stewart v. State*, 688 N.E.2d 1254, 1256 (Ind.1997).

■ It is the State's burden to demonstrate the constitutionality of the search and by failing to raise the argument that the search was reasonable under the Indiana Constitution, the State has not met its burden. *Ashley*, 661 N.E.2d at 1211. In its reply brief, the State briefly addressed its ·claim that the search was proper under Article 1, § 11 of the Indiana Constitution; however, as the State acknowledges, a party cannot raise an argument for the first time on appeal in its reply brief. *In re Eller*, 613 N.E.2d 66, 68 (Ind.Ct.App.1993). Although we agree with the State that it is allowed to respond in its reply brief to the state constitutional arguments raised by Friedel in her appellee's brief, the fact that the appellee has addressed the issue in her brief does not satisfy the State's obligation to preserve the issue for appeal. Accordingly, the State has waived any argument that the search of Friedel's purse was valid under the Indiana Constitution.[15] Moreover, waiver notwithstanding, the State cannot succeed on this issue because we have found the search improper under the federal constitution.

### *CONCLUSION*

The trial court properly granted Friedel's motion to suppress as the officers did not have a valid consent to search Friedel's purse, and there was no other proper basis for the search. We therefore affirm the trial court's order granting Friedel's motion to suppress.

Affirmed.

SULLIVAN and MATTINGLY, JJ., concur.

---

the seat. Also, the driver and the passenger gave the officer conflicting stories on where they had been and what they had been doing. Based on these facts, the court concluded that the officer was justified in requesting the driver's consent to search the vehicle, which was given, and searching the containers therein. *Id.* at 446–447. Both of these cases are factually distinguishable from the case at bar, because in addition to the driver's consent, the officers appeared to have independent probable cause for these searches.

Finally, the State additionally cites *People v. Lanahan*, 89 A.D.2d 629, 452 N.Y.S.2d 918 (1982). In *Lanahan*, the New York Supreme Court concluded that an officer reasonably looked inside a woman's purse sitting on a front seat of a vehicle when neither the driver not the passenger could identify the full name or the address of the owner of the purse, the defendant did not object to the officer's suggestion that he look inside the purse to determine the owner's name and address, and the officers had received a report of suspicious activities by the car's occupants. The *Lanahan* decision is not applicable here as it does not concern a consent issue and the defendant was not the owner of the purse that was searched. Rather the purse was stolen property, and therefore, Lanahan obviously did not have a legitimate expectation of privacy in the stolen purse.

15. Based on our decision herein, it is unnecessary for us to explicitly rule on Friedel's "Verified Petition to Strike Arguments 'II' and 'III' from the State's Reply Brief of the Appellant," filed March 18, 1999.