**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 29 2012, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| EDWARD LEFLORE, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 73A01-1111-CR-551 |

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Jack A. Tandy, Special Judge
Cause No. 73C01-1010-FA-11

**August 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Edward LeFlore appeals his convictions for burglary as a class A felony;[1] robbery as a class B felony;[2] criminal confinement as a class B felony;[3] intimidation with a deadly weapon as a class C felony;[4] carrying a handgun without a license as a class A misdemeanor,[5] and fleeing law enforcement as a class D felony[6] as well as his adjudication as an habitual offender.[7] We affirm.

## Issues

1.      Whether the trial court erred in admitting evidence; and

2.      Whether there is sufficient evidence to support LeFlore's conviction for burglary as a class A felony.

## Facts and Procedural History

In the fall of 2010, Lisa Boswell ("Lisa") lived with her father, Jerry Ayres ("Ayres"). On the evening of October 4, Lisa's daughter, Katina ("Katina") was visiting her mother. Lisa was putting away dishes and Katina was watching television when LeFlore and Anthony Cole burst through the front door wearing black "Police" t-shirts, masks, and gloves. LeFlore brandished a gun and yelled, "Police! Police! Everyone on the floor," and used

---

[1] Ind. Code § 35-43-2-1

[2] I.C. § 35-42-5-1.

[3] I.C. § 35-42-3-3.

[4] I.C. § 35-45-2-1.

[5] I.C. § 35-47-2-1.

[6] I.C. § 35-44-3-3.

[7] I.C. 35-50-2-8.

plastic zip ties to bind the women's wrists behind their backs. While Cole ransacked Ayres' bedroom, LeFlore asked Lisa for the combination to a safe that was in the garage. When the two men left the house, Cole had a bag over his shoulder.

Shortly thereafter, Shelby County Sheriff's Department Deputy Louie Koch was patrolling the area when he noticed LeFlore's SUV stopped in the road in front of Ayres' house with its lights off. As Deputy Koch turned on his emergency lights and approached the SUV, LeFlore sped away. While Deputy Koch was pursuing the vehicle, LeFlore made a quick stop in the middle of the road, jumped out of the SUV, and took off running into a wooded area. Deputy Koch found a black mask on the ground near the driver's door. He searched a field near the vehicle and found a white tank top similar to the one he had noticed that LeFlore was wearing. Deputy Koch subsequently found a black t-shirt with the word "Police" on it.

While Deputy Koch and other members of the Shelby County Sheriff's Department were searching for LeFlore and Cole, Lisa and Katina removed the zip ties from their wrists and ran to a neighbor's house. Katina had red marks similar to a rash on her wrists from the zip ties. A photo of Katina's left wrist six to eight hours after it had been bound with the zip ties still showed the red marks. Shelby County Sheriff's Department Detective Roger Clark, who is also a certified paramedic, described the marks as a "minor contusion." Tr. at 499.

Later that day, Shelby County Sheriff Michael Bowlby apprehended Cole, who had several bundles of cash in his pockets. The sheriff also arrested LeFlore, who was walking down the road barefooted in his undershorts. Deputy Koch identified LeFlore as the man who

3

had fled from the SUV earlier that evening.

The following morning Sheriff Bowlby and Deputy Koch returned to the area to search for additional evidence. They received a phone call from Ray Kleenan, who had found several items of clothing in his nearby barn. When Deputy Koch arrived at Kleenan's property, he noticed footprints in the dirt that led to a loft in the barn. When he climbed up into the loft, the deputy found jeans and tennis shoes. A wallet in the jeans contained LeFlore's driver's license and credit cards. In addition, Shelby County Sheriff's Department Deputy Hartman responded to a call from a nearby property owner who had found a pair of gloves and a black t-shirt with "police" written on it in a culvert.

Shelby County Sheriff's Department Crime Scene Technician Michael Addison photographed and collected the evidence and placed it in large envelopes. He folded over the envelopes but did not seal them before he delivered them to Detective Clark's office. Detective Clark directed Addison to leave the envelopes unsealed so the detective could evaluate every piece of evidence to determine which items needed to be sent to the lab. After assessing whether the evidence needed to be sent to the lab, Detective Clark sealed the envelopes on October 12, 2011, entered information about the evidence into the computer, and submitted each piece of evidence to the property room.

Detective Clark further explained that the unsealed bags were kept in his office, which was not open to public access. Rather, during the day the office was open to other detectives and officers who wanted to discuss cases with the detectives. In the evening, the office was only open to other detectives, the evidence technician, and a custodian who had been

4

cleaning the offices for almost thirty years. At no point did anything appear to have been touched or altered in any way.

On October 8, 2010, the State charged LeFlore with burglary as a class A felony; robbery as a class B felony; criminal confinement as a class B felony; intimidation with a deadly weapon as a class C felony; theft as a class D felony;[8] criminal gang activity as a class D felony;[9] carrying a handgun without a license as a class A misdemeanor; and fleeing law enforcement as a class D felony. The State also included the following three enhancements: carrying a handgun without a license with a prior felony;[10] habitual offender; and criminal gang activity.[11]

At trial, Katina testified that she did not feel any pain from the mark on her wrist. Additional evidence admitted at trial revealed that the SUV LeFlore had been driving was registered to Angelita Eldridge. LeFlore telephoned her when he was allowed to make calls from the jail and identified himself as "Blade." Tr. p. 517. A search of the SUV revealed an Army/Navy Surplus Store receipt for the purchase of black "Police" t-shirts. In addition, an Indiana State Police Laboratory analyst testified that LeFlore was the source of DNA found on a shirt and on a Beretta handgun.

At trial, LeFlore objected to admission of several pieces of evidence based upon either the lack of a proper foundation or an improper chain of custody. Specifically, he objected to

---

[8] I.C. 35-43-4-2.

[9] I.C. 35-45-9-3.

[10] I.C. 35-47-2-1.

[11] I.C. 35-50-2-15.

the admission of the jeans and wallet found in the hay loft and the gun found in the SUV for lack of a proper foundation and to the admission of a two black "Police" t-shirts and gloves for improper chain of custody. The trial court overruled his objections and admitted the items into evidence.

The jury convicted LeFlore of burglary as a class A felony; robbery as a class B felony; criminal confinement as a class B felony; intimidation with a deadly weapon as a class C felony; carrying a handgun without a license as a class A misdemeanor; and fleeing law enforcement as a class D felony. In return for LeFlore admitting to being a habitual offender, the State agreed to cap the sentence on the habitual offender enhancement at twenty years and to dismiss the remaining enhancements. The trial court sentenced LeFlore to an aggregate sentence of 45 years. LeFlore appeals his convictions.

## Discussion and Decision

### I. Admission of Evidence

LeFlore first argues that the trial court erred in admitting evidence. Specifically, he argues that the trial court erred in admitting into evidence the jeans and wallet found in the hayloft, the gun found in the SUV, two black "Police" t-shirts, and gloves, all because of an improper chain of custody.

As a preliminary matter we note that at trial, LeFlore objected to the admission of the jeans, wallet, and gun because of a lack of foundation. He cannot now argue for the first time on appeal that there was an improper chain of custody. The issue is waived. See State v. Friedel, 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999) (holding State waived claim when it

6

failed to raise it to the trial court). Waiver notwithstanding, we now turn to LeFlore's chain of custody argument. The gravamen of his claim is that there was an improper chain of custody because the evidence was not sealed when it was in Detective Clark's office.

The decision to admit or exclude evidence lies with the trial court's sound discretion and is afforded great deference on appeal. Filice v. State, 886 N.E.2d 24, 34 (Ind. Ct. App. 2008), trans. denied. Physical evidence is admissible if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times. Culver v. State, 727 N.E.2d 1062, 1067 (Ind. 2000). In other words, the State must give reasonable assurances that the property passed through various hands in an undisturbed condition. Id. Because the State need not establish a perfect chain of custody, once the State strongly suggests the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to its admissibility. Troxell v. State, 778 N.E.2d 811, 814 (Ind. 2002). Moreover, there is a presumption that officers exercise due care in handling their duties. Id. To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with. Id.

Here, crime scene technician Addison folded over envelopes but did not seal them before delivering them to Detective Clark's office. Detective Clark had directed Addison to leave the envelopes unsealed so that the detective could evaluate each item of evidence to determine which items needed to be sent to the lab. Detective Clark explained that the unsealed envelopes were kept in his office, which was not open to public access. During the day, the office was only open to other detectives and officers, and in the evening, it was only

open to detectives, the evidence technician, and a custodian who had been cleaning the offices for almost thirty years. At no point did anything appear to have been touched or altered in any way.

Under these circumstances, LeFlore has done nothing more than raise the possibility of tampering. As such, we find no abuse of the trial court's discretion and affirm the admission of the two black "Police" t-shirts, gloves, jeans, wallet, and gun. See Filice, 886 N.E.2d at 34 (affirming the admission of evidence where Filice's argument raised only the possibility of tampering).

**Sufficiency of the Evidence**

LeFlore next argues that there is insufficient evidence to support his conviction of class A felony burglary. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012), trans. denied. Rather, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. Id. We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

To convict LeFlore of class A felony burglary, the State had to prove that he broke and entered the structure of another with the intent to commit a felony therein and it resulted in bodily injury to any person other than a defendant. See Ind. Code § 35-43-2-1. Indiana

Code section 35-41-1-4 (2011) defines bodily injury as "any impairment of physical condition, including physical pain."

LeFlore's sole contention is that there is insufficient evidence that bodily injury resulted to Katina as charged in the information because she did not feel physical pain. However, bodily injury includes any physical impairment, not just physical pain. Here, LeFlore used plastic zip ties to bind Katina's wrists behind her back. When Katina later removed the zip ties, she had red marks similar to a rash on her wrist. A photo of her wrist six to eight hours later still showed the red marks, and a certified paramedic described the marks as a "minor contusion." Based upon this evidence of physical impairment, the jury was free to infer that bodily injury resulted to Katina. See Hanic v. State, 406 N.E.2d 335, 338 (Ind. Ct. App. 1980) (evidence of superficial red marks on the victim's arms, which were not dark enough to show up in photographs was sufficient to support a finding by the trial court of bodily injury). The evidence is therefore sufficient to support LeFlore's conviction for Class A felony burglary.

Affirmed.

RILEY, J., and CRONE, J., concur.